**LENSCRAFTERS, INC., Plaintiff,**

v.

**VISION WORLD, INC., Defendant.**

Civ. No. 3-95-137.

United States District Court,
D. Minnesota,
Third Division.

Sept. 26, 1996.

## ORDER

DAVIS, District Judge.

This matter is before the Court upon Defendant's objections to United States Magistrate Judge Erickson's Report and Recommendation dated August 23, 1996 that granted Plaintiff its motion for summary judgment as to Defendant's Amended Counterclaims. There have been no objections to that portion of the Report and Recommendation denying most of Defendant's motion for partial summary judgment on Plaintiff's claims.

Pursuant to statute, the Court has conducted a *de novo* review of the record. 28 U.S.C. § 636(b)(1); Local Rule 72.1(c). Based on that review and all the arguments of the parties, the Court ADOPTS the Report and Recommendation in its entirety.

Accordingly, IT IS HEREBY ORDERED that:

1. The Defendant's motion for summary judgment [Docket No. 44] is DENIED in part and GRANTED in part. Defendant is entitled to judgment as to Plaintiff's state law claim of unfair competition and such claim is DISMISSED with prejudice. The remainder of Defendant's motion for summary judgment is DENIED.

2. The Plaintiff's motion for summary judgment on Defendant's Amended Counterclaims [Docket No. 70] is GRANTED in its entirety. Defendant's Amended Counterclaims are DISMISSED with prejudice.

## REPORT AND RECOMMENDATION

ERICKSON, United States Magistrate Judge.

At Duluth, in the District of Minnesota, this 23rd day of August, 1996.

### I. *Introduction*

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. § 636(b)(1)(B), upon the following Motions:

1. The Defendant's Motion for Partial Summary Judgment as to certain of the claims contained in the Plaintiff's Amended Complaint; and

2. The Plaintiff's Motion for Summary Judgment as to certain of the claims contained in the Defendant's Amended Counterclaim.

Hearings on these Motions were conducted on March 21 and June 20, 1996, at which the Plaintiff appeared by Peter M. Lancaster and Christopher T. Shaheen, Esqs., and the Defendant appeared by Stephen E. Yoch, Esq.

For reasons which follow, we recommend that the Defendant's Motion be granted in part, and denied in part, and that the Plaintiff's Motion be granted.

## II. *Factual and Procedural History* [1]

The parties are competitors in the manufacture and sale of prescription eyeglasses, contact lenses, and other eye care products. The Plaintiff is an Ohio corporation which operates over 600 optical stores throughout the United States, including the State of Minnesota. The Defendant is a Minnesota corporation, which currently operates 34 retail establishments in Minnesota, and in the States that border upon Minnesota.

In the Complaint, and as echoed in the Defendant's Counterclaim, the parties have exchanged accusations that the other has engaged in false and misleading advertising, in violation of both State and Federal law. In its Complaint, the Plaintiff alleges that the Defendant has made false and misleading advertising claims as they relate to the Plaintiff's prices and its product quality. In return, the Defendant alleges that the Plaintiff, in its sales practices and product claims, has made false and misleading representations in its advertising, which have caused injury to the Defendant.

As noted, each party has filed a Motion for partial Summary Judgment. The Defendant seeks Summary Judgment on the Plaintiff's claim that it has engaged in false price advertising, while the Plaintiff seeks Summary Judgment on all of the allegations contained in the Defendant's Amended Counterclaim.

## III. *Discussion*

A. *Standard of Review.* Summary Judgment is neither an acceptable means of resolving triable issues, nor is it a disfavored procedural shortcut when there are no issues which require the unique proficiencies of a Jury to weigh the evidence and to render credibility determinations. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2554–55, 91 L.Ed.2d 265 (1986). A Summary Judgment is warranted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Rule 56, Federal Rules of Civil Procedure.* For these purposes, a disputed fact is "material" if it must inevitably be resolved and the resolution will determine the outcome of the case, while a dispute is "genuine" if the evidence is such that a reasonable Jury could return a verdict for the non-moving party. See, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986) ("An issue of material fact is genuine if it has a real basis in the record.").

As Rule 56(e) makes clear, once the moving party presents a properly supported Motion, the burden shifts to the non-moving party to demonstrate the existence of a genuine dispute. While the Court views the evidence in favor of the nonmoving party and gives that party the benefit of every justifiable inference that may be drawn from that evidence, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but * * * must set forth *specific facts* showing that there is a genuine issue for trial." *Rule 56(e), Federal Rules of Civil Procedure,* [emphasis sup-

---

1. As we observed during the Hearings on these Motions, Summary Judgment is not intended to be a mini-Trial on the merits. Many aspects of the Motions before us are rife with factual disagreements—some material and some not. Having been thoroughly frustrated in our attempts to juxtapose the contents of vaguely conflicting Affidavits, we remanded the issues to the parties for a "meet and confer," with the goal being a meaningful narrowing of the parties' disagree- ment. The remand was remarkably unsuccessful and we have now vetted the voluminous advertisements that remain in contest. While there is a natural inclination to fully explicate the factual background to the parties' conflicting renditions of the facts, we limit our factual and procedural recital to a generalized history, reserving the factual details to the "Discussion" portion of our Report.

plied]; *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir.1995); *State of Nebraska ex rel. Nelson v. Central Interstate Low–Level Radioactive Waste Comm'n.*, 26 F.3d 77, 80 (8th Cir.1994), cert. denied, —— U.S. ——, 115 S.Ct. 483, 130 L.Ed.2d 395 (1994); see also, *Cram v. Lamson & Sessions Co.*, 49 F.3d 466, 471 (8th Cir.1995); *Barnard v. Jackson County, Missouri*, 43 F.3d 1218, 1223 (8th Cir.1995), cert. denied, —— U.S. ——, 116 S.Ct. 53, 133 L.Ed.2d 17 (1995).

The non-moving party may not rest upon the mere denials or allegations of its pleadings, nor may it simply argue that operative facts will be subsequently developed which will support its claim. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, supra at 586, 106 S.Ct. at 1356 ("[O]pponent must do more than simply show there is some metaphysical doubt as to the material facts."); see, generally, S. Childress, *A New Era for Summary Judgments: Recent Shifts at the Supreme Court*, 116 F.R.D. 183, 188 (1987).

Moreover, a party is entitled to Summary Judgment where its opponent has failed "to establish the existence of an element essential to [its] case, and on which [it] will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, supra at 322, 106 S.Ct. at 2552. In such a case, no genuine issue of material fact will be found to exist because "a complete failure of proof concerning an essential element of [that party's] case necessarily renders all other facts immaterial." *Id.* at 323, 106 S.Ct. at 2552. "In determining whether a material factual dispute exists, the court views the evidence through the prism of the controlling legal standard." *Nebraska v. Wyoming*, 507 U.S. 584, 590, 113 S.Ct. 1689, 1694, 123 L.Ed.2d 317 (1993). If reasonable minds could differ as to the import of the evidence, however, Summary Judgment

should not be granted and, in exercising its function, the Court is not to weigh the evidence. *Anderson v. Liberty Lobby, Inc.*, supra at 250–51, 106 S.Ct. at 2511–12; *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir.1987).

**B.** *Legal Analysis.* Both parties seek relief against the other for alleged misconduct under the Federal Lanham Act, see *Title 15 U.S.C. § 1125(a)*, and the Minnesota Deceptive Trade Practices Act, see *Minnesota Statutes Section 325D.44.* In addition, in its Counterclaim, the Defendant alleges that it is entitled to redress under both the Minnesota Unlawful Trade Practices Act, see *Minnesota Statutes Section 325D.13*, and the Minnesota Consumer Fraud Protection Act, see *Minnesota Statutes Sections 325F.68–70.* Further, both parties assert a claim for common law unfair competition, and the Plaintiff also accuses the Defendant of engaging in common law disparagement of the Plaintiff's products. Finally, each party requests an award of its fees and costs under Minnesota Statutes Section 325F.67, which prohibits false statements in advertising. We briefly address the standards of review applicable to these causes of action, and proceed to the merits of the parties' respective Motions.

1. *Standards of Review.*

a. *The Lanham Act and Related State Statutes.*

The Lanham Act provides a civil remedy for a plaintiff who is injured by a defendant's false or deceptive advertising.[2] As well, the injured plaintiff may also bring substantially similar claims against the defendant under the Minnesota Deceptive Trade Practices Act,[3] the Minnesota Unlaw-

---

**2.** As here pertinent, the Lanham Act provides as follows:

(1) Any person who, on or in connection with any goods or services, * * * uses in commerce any word, term, name, symbol, or device, or any combination thereof, or * * * [any] false or misleading description of fact, or false or misleading representation of fact, which—

\* \* \* \* \* \*

(b) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or

another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

*Title 15 U.S.C. § 1124(a)(1).*

**3.** Minnesota Statutes Section 325D.44, subdivision 1, provides, in pertinent part, as follows:

ful Trade Practices Act,[4] and the Minnesota Consumer Fraud Protection Act.[5] In evaluating any claims that are brought under both the State and Federal Statutes, the Court applies the same analysis. See, *Medical Graphics Corp. v. SensorMedics Corp.*, 872 F.Supp. 643, 649 (D.Minn.1994); *Nordale Inc. v. Samsco Inc.*, 830 F.Supp. 1263, 1272 (D.Minn.1993), aff'd, 86 F.3d 1179 (Fed.Cir. 1996) (Table); *Alternative Pioneering v. Direct Innovative Products*, 822 F.Supp. 1437, 1441 (D.Minn.1993); *Multi–Tech Sys., Inc. v. Hayes Microcomputer Products, Inc.*, 800 F.Supp. 825, 847 (D.Minn.1992), appeal dismissed, 988 F.2d 130 (Fed.Cir.1993) (Table). Accordingly, to prevail on its claims, the plaintiff must establish the following factors:

1. the defendant made false statements of fact about its own products, or the plaintiff's products, in an advertisement;

2. the advertising actually deceived or tended to deceive a substantial segment of its audience;

3. the deception is material because it is likely to influence buying decisions;

4. the defendant caused falsely advertised goods to enter interstate commerce; and

5. the plaintiff was injured or is likely to be injured as a result.

*Alternative Pioneering v. Direct Innovative Products,* supra at 1441–42.

The plaintiff can satisfy its burden as to the first factor by demonstrating that the defendant made statements of fact regarding its own products, or the plaintiff's products, which are either literally false, or are literally true but are likely to mislead customers. *Id.* at 1442; see also, *Johnson & Johnson–Merck v. Rhone–Poulenc Rorer*, 19 F.3d 125, 129 (3rd Cir.1994); *Abbott Laboratories v. Mead*

*Johnson & Co.*, 971 F.2d 6, 13 (7th Cir.1992); *Johnson & Johnson v. GAC Int'l. Inc.*, 862 F.2d 975, 977 (2nd Cir.1988).

Whether an advertisement is literally false presents an issue of fact. *Johnson & Johnson v. GAC Int'l. Inc.*, supra at 979; *Coca–Cola Co. v. Tropicana Products*, 690 F.2d 312, 317–18 (2nd Cir.1982); *Gordon & Breach Science Publishers S.A. v. American Institute of Physics*, 859 F.Supp. 1521, 1532 (S.D.N.Y.1994). Furthermore, a determination of literal falsity rests on an analysis of the message of the advertising in context. *Johnson & Johnson–Merck v. Rhone–Poulenc Rorer,* supra; *Castrol, Inc. v. Pennzoil Co.*, 987 F.2d 939, 946 (3rd Cir.1993); *American Home Products Corp. v. Procter & Gamble Co.*, 871 F.Supp. 739, 758 (D.N.J.1994); *W.L. Gore & Associates Inc. v. Totes Inc.*, 788 F.Supp. 800, 805 (D.Del.1992). Nevertheless, when advertising has been found to be literally false, a Court may grant relief upon this finding alone, and need not consider whether the consuming public was actually misled by the advertisement's falsity. *Johnson & Johnson–Merck v. Rhone–Poulenc Rorer,* supra; *PPX Enterprises, Inc. v. Audiofidelity Enterprises, Inc.*, 818 F.2d 266, 272 (2nd Cir.1987); *American Home Products Corp. v. Johnson & Johnson*, 577 F.2d 160, 165 (2nd Cir.1978); *W.L. Gore & Associates Inc. v. Totes Inc.,* supra; *Stiffel Co. v. Westwood Lighting Group*, 658 F.Supp. 1103, 1111 (D.N.J.1987).

When advertising is alleged to be literally true yet misleading, the challenging party "bears the burden of proving actual deception by a preponderance of the evidence[;] [h]ence, it cannot obtain relief by

---

A person engages in a deceptive trade practice when, in the course of business, vocation, or occupation, the person:

\* \* \* \* \* \*

(5) represents that goods or services have \* \* \* characteristics \* \* \* [or] benefits \* \* \* that they do not have \* \* \*.

**4.** Minnesota Statutes Section 325D.13 provides as follows:

No person shall, in connection with the sale of merchandise, knowingly misrepresent, directly or indirectly, the true quality \* \* \* of such merchandise.

**5.** Minnesota Statutes Section 325F.69, subdivision 1, provides as follows:

The act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is enjoinable as provided herein.

arguing how consumers *could* react; it must show how consumers *actually do* react." *Sandoz Pharmaceuticals v. Richardson–Vicks, Inc.,* 902 F.2d 222, 228–229 (3rd Cir. 1990) [emphasis in original, citations omitted]; see also, *Johnson & Johnson–Merck v. Rhone–Poulenc Rorer,* supra; *Castrol, Inc. v. Pennzoil Co.,* supra at 943; *Johnson & Johnson v. GAC Int'l. Inc.,* supra at 977; *American Home Products Corp. v. Johnson & Johnson,* supra; *American Home Products Corp. v. Procter & Gamble Co.,* supra; *W.L. Gore & Associates Inc. v. Totes Inc.,* supra at 806; *Energy Four, Inc. v. Dornier Medical Systems, Inc.,* 765 F.Supp. 724, 732 n. 3 (N.D.Ga.1991). The challenging party satisfies this burden by producing evidence of actual consumer reaction to the challenged advertising, which can take the form of direct evidence, such as actual consumer testimony, or circumstantial evidence, such as consumer surveys, consumer reaction tests or market research. *Ortho Pharmaceutical Corp. v. Cosprophar, Inc.,* 32 F.3d 690, 695 (2nd Cir. 1994); *Johnson & Johnson–Merck v. Rhone–Poulenc Rorer,* supra; *Castrol, Inc. v. Pennzoil Co.,* supra; *PPX Enterprises, Inc. v. Audiofidelity Enterprises, Inc.,* supra at 271; *American Home Products Corp. v. Johnson & Johnson,* supra; *American Home Products Corp. v. Procter and Gamble Co.,* supra; *W.L. Gore & Associates Inc. v. Totes Inc.,* supra.

■ Furthermore, when evaluating allegations of false or misleading advertising, the Courts draw a distinction between false or misleading descriptions of specific or absolute characteristics of a product—which are actionable—and generalized statements of product superiority, that are expressed in broad, vague, and commendatory language. These latter descriptions constitute "puffery," and are not actionable under the Lanham Act, or under related State Statutes. *Lipton v. Nature Co.,* 71 F.3d 464, 474 (2nd Cir.1995); *Castrol, Inc. v. Pennzoil Co.,* supra at 945; *Cook, Perkiss & Liehe v. Northern Calif. Collection Service, Inc.,* 911 F.2d 242, 246 (9th Cir.1990); *Gordon & Breach Science Publishers S.A. v. American Institute of Physics,* 905 F.Supp. 169, 182 (S.D.N.Y.1995). Accordingly, the following have been deemed mere puffery:

1. Statement by catalog author that he "thoroughly researched dozens and dozens of animals."

*Lipton v. Nature Co.,* supra.

2. Advertising which posed the question "[w]ould you prefer to do business with the * * * company with the best technology, lower rates, and better customer service?"

*Cook, Perkiss & Liehe v. Northern Calif. Collection Service, Inc.,* supra, citing *Metro Mobile CTS Inc. v. Newvector Communications, Inc.,* 643 F.Supp. 1289 (D.Ariz.1986), rev'd without opinion, 803 F.2d 724 (9th Cir. 1986) (Table).

3. Advertising which contained claims of "the most cost-effective prices" and "subscription prices as low as possible."

*Gordon & Breach Science Publishers S.A. v. American Institute of Physics,* supra at 182.

4. Advertising which claimed that "the AccuCut system is 'completely compatible with every die cutting system available today.'"

*Ellison Educational Equip., Inc. v. Tekservices,* 903 F.Supp. 1350, 1356 (D.Neb.1995).

Moreover, the issue of whether a statement is false or misleading, or "mere puffery," is one which is appropriate for resolution as a matter of law. *Cook, Perkiss & Liehe v. Northern Calif. Collection Service, Inc.,* supra.

■ A complaining party's burden is, in part, dependent upon the relief that it seeks. A plaintiff who wishes to recover money damages for a violation under the Lanham Act and under related State Statutes, must prove that the defendant's violation caused actual confusion among the consumers of the plaintiff's product and, as a result of this consumer confusion, the plaintiff suffered actual injury, such as a loss of sales, profits, or of present value. *Resource Developers, Inc. v. Statue of Liberty–Ellis Island,* 926 F.2d 134, 139 (2nd Cir.1991); *Web Printing Controls Co., Inc. v. Oxy–Dry Corp.,* 906 F.2d 1202, 1204–05 (7th Cir.1990); *PPX Enterprises, Inc. v. Audiofidelity Enterprises, Inc.,* supra at 271–72. When a plaintiff seeks only injunctive relief, however, it need only prove a likelihood of confu-

sion among consumers that has resulted from the defendant's violation. *Resource Developers, Inc. v. Statue of Liberty–Ellis Island,* supra; *Web Printing Controls Co., Inc. v. Oxy–Dry Corp.; PPX Enterprises, Inc. v. Audiofidelity Enterprises, Inc.,* supra at 271; cf., *Black Hills Jewelry Mfg. Co. v. Gold Rush, Inc.,* 633 F.2d 746, 753 (8th Cir. 1980) (holding that a plaintiff in a Lanham Act trademark violation action must demonstrate that the defendant's violation tended to deceive consumers). Further, where a defendant has engaged in literally false advertising, or literally true advertising which makes direct and misleading comparisons between the defendant's products and those of the plaintiff, the Courts will presume that the plaintiff has suffered injury which warrants injunctive relief. *McNeilab, Inc. v. American Home Products Corp.,* 848 F.2d 34, 38 (2nd Cir.1988); *W.L. Gore & Associates Inc. v. Totes Inc.,* supra at 811; *Energy Four, Inc. v. Dornier Medical Systems, Inc.,* supra; *Valu Engineering, Inc. v. Nolu Plastics, Inc.,* 732 F.Supp. 1024, 1025 (N.D.Cal. 1990).

b. *The State Common Law Claims.*

Product disparagement or "trade libel" is a subspecies of the common law tort of publishing an injurious falsehood. The general principles of the tort of injurious falsehood are expressed as follows:

One who publishes a false statement harmful to the interests of another is subject to liability for pecuniary loss resulting to the other if

(a) he intends for publication of the statement to result in harm to interests of the other having a pecuniary value, or either recognizes or should recognize that it is likely to do so, and

(b) he knows that the statement is false or acts in reckless disregard of its truth or falsity.

*Restatement (Second) of Torts § 623A* (1977).

As noted, these same general principles apply to the tort of product disparagement and, therefore, a defendant may be liable for "the publication of matter disparaging the quality of another's land, chattels or intangible things, that the publisher should recognize as likely to result in pecuniary loss to the other through the conduct of a third person in respect to the other's interests in the property." *Id.* at § 626.

To recover under the product disparagement doctrine, however, a plaintiff must be able to prove special damages "in the form of pecuniary loss directly attributable to defendant's false statements." *Advanced Training Systems v. Caswell Equipment Co.,* 352 N.W.2d 1, 7 (Minn.1984); see also, *Amerinet, Inc. v. Xerox Corp.,* 972 F.2d 1483, 1502 (8th Cir.1992) (construing Minnesota law of product disparagement), cert. denied, 506 U.S. 1080 (1993). If the plaintiff cannot show a loss of specific sales, it may still satisfy this burden by proving a general decline of business, provided that the decline can be shown to have resulted from the defendant's disparaging statements, and not because of other possible causes. *Advanced Training Systems v. Caswell Equipment Co.,* supra at 7–8.

As to the claims of unfair competition, under Minnesota law, "[u]nfair competition is not a tort with specific elements," but rather, "it describes a general category of torts which courts recognize for the protection of commercial interests." *Zimmerman Group v. Fairmont Foods of Minnesota,* 882 F.Supp. 892, 895 (D.Minn.1994), quoting *Rehabilitation Specialists, Inc. v. Koering,* 404 N.W.2d 301, 305–06 (Minn.Ct. App.1987). Torts included under the rubric of unfair competition include product disparagement, see, *id.,* citing *Advanced Training Systems v. Caswell Equipment Co.,* supra, tortious interference with contractual interests, and improper use of trade secrets. *United Wild Rice, Inc. v. Nelson,* 313 N.W.2d 628, 632 (Minn.1982). Therefore, to remain viable, a common law unfair competition claim "must identify the underlying tort which is the basis for [the claim]." *Zimmerman Group v. Fairmont Foods of Minnesota,* supra. Moreover, if the underlying tort is duplicative of another Count of the Complaint, the claim for unfair competition cannot stand. *Id.* So, to prevail on a claim of unfair competition, the plaintiff

must prove actual injury by demonstrating that consumers would have bought its products, instead of the defendant's, but for the defendant's assertedly unfair competition. *Multi–Tech Sys., Inc. v. Hayes Microcomputer Products, Inc.,* supra at 848, citing *Johnson & Johnson v. Carter–Wallace, Inc.,* 631 F.2d 186, 189 (2nd Cir.1980), and *Construction Technology v. Lockformer Co., Inc.,* 704 F.Supp. 1212, 1217–18 (S.D.N.Y. 1989).

### c. The Claims Under Minnesota Statutes Section 325F.67.

■■■■ Minnesota Statutes Section 325F.67 provides a criminal penalty for false advertising. A person injured by a violation of the Statute may, however, in a civil action, recover its attorney fees and costs pursuant to Minnesota Statutes Section 8.31. *Kronebusch v. MVBA Harvestore System,* 488 N.W.2d 490, 494–95 (Minn.Ct.App.1992), pet. for review denied, (Minn., October 20, 1992). The elements essential to the proof of a violation of this Statute are as follows:

1. intent;

2. publication;

3. a false or misleading advertisement.

*Op.Att'y Gen. 417–e,* (October 3, 1951), cited in *Dunnell Minnesota Digest, Volume 22, Fraud § 1.05* (4th Ed.1994).

In addition, for a civil recovery, there is an implicit requirement of damage to the complaining party. *Kronebusch v. MVBA Harvestore System,* supra.

2. *Legal Analysis.* Given these precepts, we examine each of the parties' Motions.

### a. The Defendant's Motion for Partial Summary Judgment on the Plaintiff's Complaint.

■■ By this Motion, the Defendant seeks Summary Judgment on the Plaintiff's claim that the Defendant has engaged in false price comparison advertising. In support of this Motion, the Defendant contends that none of its price comparison advertising contains a false statement of fact, and it further maintains that the Plaintiff can offer no evidence which would demonstrate to the contrary.

Responding to the Defendant's Motion, the Plaintiff has submitted, for the Court's review, a total of 153 of the Defendant's advertisements which, the Plaintiff claims, contain false statements of fact concerning the Plaintiff's products. The Plaintiff argues that these advertisements demonstrate that genuine issues of material fact envelop the alleged falsity of the Defendant's advertising, and that these factual disputes preclude a grant of the Defendant's Motion. The Plaintiff has grouped the Defendant's allegedly false advertisements into six general categories, with several advertisements included in more than one grouping. Accordingly, we examine each of these general categories in turn.[6]

### i. Advertisements Which, The Plaintiff Alleges, Falsely Claim To Be "This Week's Eyewear Price Check".

The Defendant has repeatedly run advertisements entitled "This Week's Eyewear Price Check," which list comparisons between the prices for certain of the Plaintiff's products, with the prices, that are charged

---

**6.** In its Complaint, the Plaintiff alleges that the Defendant engaged in false and deceptive advertising in 1986 and, again, in 1989. See, *Complaint* at ¶ 13. The Plaintiff now concedes that these advertisements are not actionable *per se* because of the applicable statutes of limitations, see, *Multi–Tech Sys., Inc. v. Hayes Microcomputer Products, Inc.,* 800 F.Supp. 825, 849 (D.Minn. 1992) (applying six-year statute of limitations to claims under Lanham Act), appeal dismissed, 988 F.2d 130 (Fed.Cir.1993) (Table); *Klehr v. A.O. Smith Corp.,* 875 F.Supp. 1342, 1353 (D.Minn.1995) (applying six-year statute of limitations to claims under Minnesota Statutes Sections 325D.44 and 325F.67), aff'd, 87 F.3d 231 (8th Cir.1996), or because of the doctrine of

laches. See, e.g., *Goodman v. McDonnell Douglas Corp.,* 606 F.2d 800, 804 (8th Cir.1979), cert. denied, 446 U.S. 913, 100 S.Ct. 1844, 64 L.Ed.2d 267 (1980). Nevertheless, the Plaintiff argues that evidence of the 1986 and 1989 advertisements remains admissible on the issue of whether the Defendant engaged in "willful" acts of false advertising. While we express no opinion on the propriety of this assertion of admissibility, in view of the Plaintiff's earlier concession on the pertinent limitations period, we recommend that the Defendant's Motion for Partial Summary Judgment, as to any claims for relief which specifically arose from the 1986 and 1989 advertisements, be granted.

by the Defendant, for an identical product.[7] However, for each of these advertisements, the listed price of the Plaintiff's products is weeks, and at times months, out-of-date. Although each advertisement also lists the date of the actual price survey—albeit in somewhat small print—the Plaintiff argues that the message conveyed by the advertisement is that the listed prices are actually "this week's" prices. While the Defendant disputes this assertion, we are unable to conclude that, viewed in context, a reasonable Juror would be unable to find that these advertisements are literally false. Accordingly, for this reason alone, the Defendant's Motion for Partial Summary Judgment cannot be granted in this respect.

ii. *Advertisements Which, The Plaintiff Alleges, Are False Because They Purport To Compare The Plaintiff's "Sale" Price With The Defendant's "Price."*

In these advertisements, the Defendant purports to compare the Plaintiff's "Sale" price with the Defendant's "price."[8] As to each advertisement, the word "Sale" is underlined and printed in bold type. The Plaintiff argues that the message conveyed by these advertisements is that the Defendant's "regular" price beats the Plaintiff's "sale" price. The Plaintiff offers evidence, however, which the Defendant does not dispute, that each of the Defendant's prices, which are referenced in these advertisements, were actually sale prices. As a result, the Plaintiff argues that these advertisements falsely convey that the Defendant's regular prices beat the Plaintiff's sale prices. Plainly, this argument involves genuine issues of material fact for the Jury's—and not the Court's—resolution.

iii. *Advertisements Which, The Plaintiff Alleges, Are False Because They Attribute Prices To The Plaintiff Which Do Not Accurately Reflect The Plaintiff's Actual Prices.*

This category includes advertisements which, the Plaintiff alleges, attribute prices to its products which are inaccurate. The category contains a subcategory of advertisements which, the Plaintiff alleges, lists prices for its lens and frames which are false because, at the time that the prices were surveyed, the Plaintiff was offering 50% off sales on the pertinent items, see, *Declaration of Lynn Pike*, at ¶ 5, and these discounts were not reflected in the prices listed in the advertising.[9] In addition, the Plaintiff alleges that some of the prices listed in this advertising are simply false representations of the Plaintiff's regular prices for the particular items.[10]

Furthermore, this general category also contains a subcategory of advertisements which, the Plaintiff alleges, contains prices for its products which are false because, at the time that the advertising was displayed, the Plaintiff was offering its 50% off sale on the pertinent items.[11] Finally, this general category contains a third subcategory which contains several advertisements for which no display date has been identified, but which contain survey dates that occurred shortly before one of the Plaintiff's 50% off sales and, therefore, the Plaintiff argues that it can be inferred that these advertisements ran during the time of the sales, making the

---

7. This category includes some 94 advertisements which are attached as Tab 1 to the Plaintiff's Supplemental Memorandum in Opposition to the Defendant's Motion for Partial Summary Judgment.

8. This category includes 7 advertisements which are attached as Tab 2 to the Plaintiff's Supplemental Memorandum in Opposition to the Defendant's Motion for Partial Summary Judgment.

9. This subcategory includes 8 advertisements which are attached as Tab 3A to the Plaintiff's Supplemental Memorandum in Opposition to the Defendant's Motion for Partial Summary Judgment.

10. The advertisements in this subcategory—which are attached as Tab 3A to the Plaintiff's Supplemental Memorandum in Opposition to the Defendant's Motion for Partial Summary Judgment—have been denominated as VW0820, VW0823, VW0826, VW1075, VW1078, VW1081, VW1156–57, VW1159, VW1213 AND VW1218. The pricing information upon which the Plaintiff relies is found in the *Declaration of Lynn Pike*, at ¶¶ 2–4.

11. This category includes 7 advertisements which are attached as Tab 3B to the Plaintiff's Supplemental Memorandum in Opposition to the Defendant's Motion for Partial Summary Judgment.

prices contained in this advertising literally false.[12]

Against these assertions, the Defendant offers no convincing rebuttal. Although it insists that its advertisements are not literally false, because the Plaintiff's 50% sale discount is only available with a full purchase of glasses, while the advertisements at issue specifically compare the prices of eyeglass components alone, in our view, the factual issues raised by the Plaintiff's assertions are sufficiently serpentine to require a Jury's factfinding. Therefore, for this reason alone, the Defendant's Motion for Partial Summary Judgment should be denied, at least in this respect.[13]

iv. *Advertisements Which, The Plaintiff Alleges, Are False Because They Claim That "We Beat LensCrafters' Sales Prices" And That "Vision World's Everyday Low Prices Beat LensCrafters Sale Prices."*

The Defendant has run print and television advertisements which claim that "We Beat LensCrafters' Sale Prices," and that "Vision World's Everyday Low Prices Beat Lens-Crafters' Sale Prices." [14] In addition, the Defendant has displayed a banner, at one of its stores, which contains the legend "We Beat LensCrafters' Sales Prices." *Declaration of Ellen Sundstrom,* at ¶ 8.

The Plaintiff argues that the meaning conveyed by this advertising is that the Defendant's regular prices consistently beat the Plaintiff's sale prices, and it challenges these advertisements on two grounds. First, it argues that a comparison of the Defendant's list prices, see, *Affidavit of Joshua Burke, Exhibit B,* and the Plaintiff's prices, from the time that this action was commenced, see *Declaration of Lynn Pike,* fails to reveal any instances where the Defendant's regular price beats the Plaintiff's 50% off sale price. Second, extrapolating from that same data,

the Plaintiff offers several hypothetical instances where either the Plaintiff's sale price, or its regular price, would be lower than the Defendant's price for the identical product.

Responding to these arguments, the Defendant again insists that its advertisements are not literally false, because the Plaintiff's 50% sale discount is only available with a full purchase of glasses, while the contested advertisements compare only the prices of eyeglass components. As we have already observed, however, while this argument could, perhaps, persuade the finder of fact, it is inoperative for Summary Judgment purposes, since it requires a weighing of conflicting facts. Accordingly, the Defendant is not entitled to Partial Summary Judgment on the Plaintiff's false price comparison claims.

v. *Advertisements Which, The Plaintiff Alleges, Are False Because They Purport To Compare The Defendant's Prices To The Plaintiff's Prices When The Plaintiff Offers Valuable Additional Services And Warranties.*

The Plaintiff argues that virtually all of the Defendant's challenged advertisements contain false statements of fact because they compare the prices charged by the parties for identical products "without indicating the markedly different product services and warranties that [the Plaintiff's] customers receive for the price they pay, including 30–day return guaranties, 30–day price matching guaranties, one-year scratch protection guaranties, and free lifetime cleaning and adjustments." See, *Plaintiff's Supplemental Memorandum in Opposition to the Defendant's Motion for Partial Summary Judgment,* at 7. The Plaintiff notes that the Defendant raised its own price on adult polycarbonate lenses by $10 when it began offering a one-year scratch protection guarantee which is similar to that offered by the Plaintiff. In response, the Defendant argues that the advertisements are merely intended to compare

12. This category includes 6 advertisements which are attached as Tab 3C to the Plaintiff's Supplemental Memorandum in Opposition to the Defendant's Motion for Partial Summary Judgment.

13. In addition, the Defendant's rebuttal does not address the Plaintiff's allegation that some of the

challenged advertising contained false representations of the Plaintiff's regular prices.

14. This category includes 3 advertisements which are attached as Tab 4 to the Plaintiff's Supplemental Memorandum in Opposition to the Defendant's Motion for Partial Summary Judgment.

prices alone, and that the failure to include information concerning warranties, and other related services, does not render these price comparisons literally false.

We agree with the Defendant, that this is the weakest of the Plaintiff's assertions that the Defendant's advertising was literally false and, if this were the only evidence presented by the Plaintiff in opposition to the Defendant's Motion, we might well be persuaded that a grant of Partial Summary Judgment would be warranted. However, this is not the only evidence that the Defendant has advanced. Furthermore, while the advertising, that is here challenged by the Plaintiff, may not be literally false, it could be asserted that it is literally true, yet misleading, because it arguably compares the prices of identical products with substantially different ancillary services. While the Plaintiff has not submitted evidence of actual, consumer confusion, that is attributable to this assertedly deceptive advertising, in moving for Partial Summary Judgment, the Defendant solely urged that the challenged advertising was not literally false. Therefore, on this Record, the issue of whether this advertising is misleading is unsuitable for Summary Judgment.[15]

### vi. *Advertisements Which, The Plaintiff Alleges, Are False Because They Include The Cost Of An Eye Exam.*

This category includes advertisements in which a price comparison is made between the parties' products, but which attribute the price of an optical examination to the Plaintiff.[16] It is uncontroverted, however, that the Plaintiff does not employ optometrists. Instead, independent optometrists maintain offices adjacent to the Plaintiff's retail facilities, and these optometrists conduct any opti-

cal examinations which may be required in conjunction with the purchase of the Plaintiff's products, and these optometrists charge their own fees for this service. Accordingly, the Plaintiff argues that the Defendant's advertisements, which attribute the cost of an optical examination to the Plaintiff, are literally false, since the Plaintiff receives none of the charges for these examinations. The Defendant does not substantively rebut the Plaintiff's assertions and, quite obviously, these allegations tellingly demonstrate that genuine issues of material fact attend the asserted falsity of the Defendant's advertisements, which preclude the entry of the Partial Summary Judgment that the Defendant has requested.

In sum, we conclude that the Plaintiff has produced evidence sufficient to raise a plethora of genuine and material factual issues. Since the Defendant's Motion for Partial Summary Judgment was solely premised upon its assertion that its advertising was devoid of any literally false statements and, since the making of a false statement is an essential element of the Plaintiff's statutory and common law claims, we are unable to decide the bulk of the issues, that are presented by the Defendant's Motion, as a matter of law.

We do agree, however, that the Defendant is entitled to a grant of Partial Summary Judgment on the Plaintiff's claim for unfair competition. Although not specifically raised by the Defendant, a viable claim of unfair competition must identify the underlying tort upon which it is premised. *Zimmerman Group v. Fairmont Foods of Minnesota*, supra. Here, the Plaintiff does not identify the tort which undergirds its claim of unfair competition and, while the Plaintiff has asserted

**15.** We reject outright the Defendant's suggestion that we should take judicial notice that no comparative advertising, which was conducted at this time—no matter what the product—contains comparative information concerning warranties and other services. Within the Federal Courts, judicial notice of adjudicative facts is reserved for those facts which are either generally known within the territorial jurisdiction of the District Court, or are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. *Rule 201(b), Federal Rules of Evidence.* Here, the De-

fendant does not draw our attention to any authoritative source to verify the factual proposition for which it seeks judicial notice, nor are we able to say that the proposition proffered is generally known within the territorial limits of this Court.

**16.** This category includes 83 advertisements which are attached as Tab 6 to the Plaintiff's Supplemental Memorandum in Opposition to the Defendant's Motion for Partial Summary Judgment.

an action for product disparagement, it may not duplicate that claim in an action for unfair competition. *Id.* Therefore, we recommend that the Defendant's Motion for Partial Summary Judgment, as to the Plaintiff's unfair competition claim, be granted.

b. *The Plaintiff's Motion for Summary Judgment on the Defendant's Counterclaim.*

In its Amended Counterclaim, the Defendant has asserted six broadly-worded claims that the Plaintiff has engaged in false or misleading advertising with respect to the Plaintiff's products. For each of these six claims, the Plaintiff has moved for Summary Judgment arguing that, as to each, the Defendant has failed "to establish the existence of an element essential to [its] case, and on which [it] will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* supra, 477 U.S. at 322, 106 S.Ct. at 2552. Accordingly, we examine each of the Defendant's claims, in order to determine whether they can withstand the Plaintiff's dispositive Motion.

i. *The Plaintiff's Motion for Summary Judgment on the Defendant's "Continuous Sales" Claim.*

In its Amended Counterclaim, the Defendant alleges the following:

For several years and currently in its various advertising * * * [the Plaintiff] has continuously, systematically and intentionally engaged in ongoing or continuous sales of eyeglass products through various purported "discounts," including honoring competitors' coupons, "senior discounts," "insurance discounts," and even general "global discounts." So many of [the Plaintiff's] products are continuously "discounted" or "on sale" at all times that no regular prices in fact exist from which discounts may be calculated. In effect, the discounted prices are the regular prices charged by [the Plaintiff] for its products.

*Amended Complaint,* at ¶ 7.

It is the Defendant's contention that the Plaintiff's practice of allegedly engaging in advertised "continuous sales" constitutes actionable false advertising. The Defendant does not argue that the Plaintiff has made any literally false statements in the advertising which relates to the "continuous sales" claim but, rather, the Defendant contends that the practice is misleading, and is likely to cause confusion among consumers, since the Plaintiff assertedly advertises "sale" prices when, as a result of its alleged "continuous sales," its "sale" prices are actually its "regular" prices.

Nevertheless, even assuming, *arguendo,* that the Plaintiff does engage in "continuous sales" advertising, it is still entitled to Summary Judgment on this claim since the Defendant has offered no competent evidence of any actual consumer deception that has resulted from this practice. In this respect, the Defendant's only showing, in opposition to the Plaintiff's Motion, is a purported quotation from the Better Business Bureau Optical Industry Advisory Committee Standard No. 4, which reads as follows:

By definition, a "sale" price or "discount" offer or "free" item must be temporary in nature because such offers lead consumers to believe a price concession is being made. That is, the consumer is led to believe that these offers represent a reduction from the regular price. Therefore, continuous sales are not sales at all, and should not be advertised in any form.

In the optical business, a form of misleading continuous sale on a customer transaction exists whenever a discount on any component of the customary transaction is offered on an ongoing basis.

We find this ostensible, "evidentiary" showing to be wanting, however, for two reasons. First, the quotation reveals nothing about the effect that the Plaintiff's alleged "continuous sales" advertising has had on the consuming public but, instead, it merely reflects a general disapproval of the practice of offering continuous sales, together with an otherwise unsubstantiated opinion that such sales can lead to consumer confusion.

Second, the quotation from the Better Business Bureau Standard has not been presented to the Court in a form which would be admissible at Trial and, therefore, this Standard is not legally cognizable for purposes of this Motion. See, *Rule 56(e), Federal Rules of Civil Procedure* ("Support-

ing and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."); see also, *Firemen's Fund Insurance Co. v. Thien*, 8 F.3d 1307, 1310 (8th Cir. 1993); *Financial Timing Publications v. Compugraphic Corp.*, 893 F.2d 936, 942 (8th Cir.1990); *Pink Supply Corp. v. Hiebert, Inc.*, 788 F.2d 1313, 1319 (8th Cir.1986); *Board of Trustees v. American Benefit Plan Administrators*, 925 F.Supp. 1424, 1431 n. 5 (D.Minn.1996). The Better Business Bureau Standard does not satisfy this evidentiary threshold. It is not in the form of a sworn affidavit, that has been made upon personal knowledge, nor is it either a Rule 33 Answer to an Interrogatory, or a Rule 35 Admission. The Standard does not report the results of a recognized consumer survey, having an established, underlying evidentiary foundation, nor does it constitute an acknowledged, learned treatise. Indeed, the Defendant has not even submitted a true and correct copy of the Standard for the Court's consideration, but merely relies upon an unsubstantiated quotation of the Standard, as contained in it Counterclaim. For this reason alone, the Standard is not properly before the Court in an admissible form. See, *Rule 56(e), Federal Rules of Civil Procedure* ("Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.").

As a consequence, we conclude that the Defendant has failed to offer any evidence of actual, consumer confusion, which is attributable to the Plaintiff's alleged "continuous sales" advertising and, therefore, the Defendant has failed to establish the existence of an essential element of its claim, as to which it will bear the burden of proof at Trial. *Celotex v. Catrett*, supra. Accordingly, we recommend that the Plaintiff's Motion for Summary Judgment, on this aspect of the Defendant's Amended Counterclaim, be granted.

**17.** The Defendant does concede that the advertising is not literally false.

*ii. The Plaintiff's Motion For Summary Judgment On The Defendant's "Lowest Price" Claim.*

█ It is undisputed that the Plaintiff has, at various times over the last several years, conducted advertising which claims that the Plaintiff offers the "Lowest Price Guarantee," a "Low Price Guarantee," or the "Lowest Prices * * * Guaranteed." An example of this advertising has been attached to the Defendant's materials in opposition to the Plaintiff's Motion. See, *Affidavit of Stephen E. Yoch, page 1.* This advertisement bears the legend "Lowest Prices * * * Guaranteed" and, beneath this legend, in smaller but clear print, the advertisement continues as follows:

> We match anyone's prices so you're guaranteed the best price around. If within 30 days of your purchase you find a lower price for the same glasses (frame and lenses) in stock at any other retail store, we'll gladly refund the difference. See store for details.

Despite the clarity of this pronouncement, the Defendant argues that the Plaintiff's "Low Price" and "Lowest Price" advertising is literally true but misleading.[17] Once again, however, the Defendant offers no evidentiary support for this contention so as to rebut the Defendant's showings.

As purported evidence of consumer confusion, assertedly caused by the Plaintiff's "Low Price" advertising, the Defendant again relies only upon an unsubstantiated quotation from the Better Business Bureau's Optical Advisory Committee Standards,[18] which reads as follows:

> c. Use of words "Lowest prices" or wording to similar effect is considered to be potentially misleading when used to characterize a customer satisfaction policy involving price matching or beating. Casual readers of advertisements may assume that the advertiser in fact sells at prices as low or lower than competitors. The use of such wording is defensible provided the advertiser actually has the lowest prices on

**18.** Here again, the Defendant has failed to attach a true and correct copy of this Standard for our review.

every item falling under the scope of its advertising claim and the advertiser has an active, comprehensive, and effective program of monitoring competitors' prices to insure that its prices are in fact lower. d. Use of words "Lowest prices guaranteed" or similar effect is considered to be misleading when used to characterize a customer satisfaction policy involving price matching or beating. Casual readers of advertisements may assume that the advertiser in fact sells at prices as low or lower than competitors. The use of such advertising is defensible provided the advertiser actually has an active, comprehensive, and effective program of monitoring competitors' prices to insure that its prices are in fact equal or lower and promptly lowers its prices when through advertising or other means it learns of a lower price by competitors. In particular, whenever a customer exercises the price matching or beating guarantee, the advertiser must immediately reduce its prices not just to the customer receiving the discount or refund but to all other potential customers, and such reductions must be reflected in advertisements, price tags or any other means by which the price is presented to the public.

We have already addressed the deficiencies of such an "evidentiary" showing as support for the contention, otherwise unproved, that consumer confusion has resulted from the Plaintiff's "Lowest Price" advertisements. Therefore, in the absence of a genuine issue of material fact on this issue, the Plaintiff's Motion for Summary Judgment should be granted.

■ Furthermore, in its moving papers, the Plaintiff has affirmatively represented that it does not now, and that it will not in the future, be conducting advertising which will contain a "Lowest Price" guarantee. In this respect, it bears some emphasis that the Defendant has conceded, that it cannot prove any actual injury that has resulted from the Plaintiff's "Lowest Price" advertising and, therefore, the only remedy available to the Defendant, as to this claim, is injunctive relief. It is well-settled, however, that the need for injunctive relief is obviated when the party accused of using false or misleading advertising represents that the advertisements will not be repeated. See, e.g., *Consumers Union of United States, Inc. v. General Signal Corp.*, 724 F.2d 1044, 1052 n. 11 (2nd Cir.1983), cert. denied, 469 U.S. 823, 105 S.Ct. 100, 83 L.Ed.2d 45 (1984); *American Home Products v. Procter & Gamble*, supra at 761; *American Express Travel Related Services Company, Inc. v. MasterCard International, Inc.*, 776 F.Supp. 787, 790–91 (S.D.N.Y.1991); *Tambrands, Inc. v. Warner–Lambert Co.*, 673 F.Supp. 1190, 1198 (S.D.N.Y.1987). Accordingly, for this additional reason, we recommend that the Plaintiff's Motion for Summary Judgment, on the Defendant's "Low Price" and "Lowest Price" Guarantee claim, be granted.

iii. *The Plaintiff's Motion for Summary Judgment on the Defendant's "ANSI Standards" Claim.*

■ In its past advertising, the Plaintiff has claimed that their "work meets or exceeds the standards set by the American National Standards Institute," (the "ANSI Standard"). See, *Affidavit of Stephen E. Yoch*, at page 1. The Defendant maintains that this statement is literally false, as corroborated by the following language, which is found in the introduction to the pertinent ANSI Standards Manual:

[I]t is difficult to meet all of the requirements simultaneously in any given lens or mounted pair. The fact that, under rigorous application of this standard, a significant number of spectacles (approximately 25%, based upon current industry data) will not achieve all parameters simultaneously, must be accepted as a reflection of the current state-of-the-art.

*Declaration of Stephen E. Yoch*, at page 2. Extrapolating from this language, the Defendant seeks to draw an inference that 25% of the Plaintiff's products do not meet the ANSI Standards. Therefore, according to the Defendant, the Plaintiff's claim that its work "meets or exceeds" the ANSI Standards is literally false. We disagree.

Even the most cursory review of the quotation from the ANSI Standards Manual reveals that nothing substantiates the bald con-

clusion that 25% of the Plaintiff's products do not measure up to ANSI Standards. Rather, the language merely opines, in general terms, that a certain percentage of eyeglasses manufactured by the industry as a whole will likely not meet the referenced Standard. As a consequence, there is simply no evidence of Record which belies the Plaintiff's claim that its work "meets or exceeds" the ANSI Standards and, indeed, the data contained in a study commissioned by the Defendant suggests that this claim might well be literally true. See, *Declaration of Peter M. Lancaster, dated May 23, 1996,* at pages 20–22.

Furthermore, in its present form, the evidence of the ANSI Standard is not legally cognizable support for even the broad assertion that 25% of eyeglasses, that are manufactured in the industry, will not satisfy the Standard for, while the Defendant has attached an assertedly true and correct copy of the selected portions of the ANSI Standard, it has failed to include the necessary affidavits, or any other supporting documentation, which could establish the proper evidentiary foundation to transform the quotation into admissible evidence.

Since the Defendant has offered no competent evidence in support of its assertion that the Plaintiff's ANSI Standard advertising is literally false, and has not proffered any evidence that the advertising is literally true, and yet is misleading, those claims are not actionable. Furthermore, as was the case with its "Lowest Price" advertising, the Plaintiff has represented that it does not run advertising that is challenged here, and will not be conducting that form of advertising in the future. Thus, any claim which the Defendant might have had for injunctive relief, owing to this form of advertising, has been rendered moot. Since the Defendant concedes that it is not entitled to monetary relief on this claim, because it cannot demonstrate any actual injury, we recommend that the Plaintiff's Motion for Summary Judgment be granted on this aspect of the Defendant's Amended Counterclaim.

iv. *The Plaintiff's Motion For Summary Judgment On The Defendant's "Most Advanced Equipment" Claim.*

 In its advertising, the Plaintiff has claimed that it uses "the most advanced

equipment available[.]" *Affidavit of Stephen E. Yoch,* at page 1. The Defendant argues that this statement is literally false and, in support of this contention, it argues that some of the Plaintiff's equipment is actually inferior to that used by the Defendant.

While we accept the Defendant's argument as true, at least for purposes of this Motion, we agree with the Plaintiff that this statement constitutes mere puffery and, therefore, it is not actionable. In claiming that it employs "the most advanced equipment available," the Plaintiff does no more than voice a generalized exaggeration or overstatement of superiority, which is expressed in broad, vague and commendatory terms. As such, it bears a strong resemblance to other equally embellishing, but nonspecific promoting, that the Courts have routinely regarded as unactionable touting. See, e.g., *Lipton v. Nature Co.,* supra (catalog author "thoroughly researched dozens and dozens of animals"); *Cook, Perkiss & Liehe v. Northern Calif. Collection Service, Inc.,* supra, citing *Metro Mobile CTS Inc. v. Newvector Communications, Inc.,* supra ("[w]ould you prefer to do business with the company with the best technology, lower rates, and better customer service?"); *Ellison Educational Equip., Inc. v. Tekservices,* supra ("the Accu–Cut system is 'completely compatible with every die cutting system available today'").

Furthermore, as with its "Lowest Price" and "ANSI Standard" advertising, the Plaintiff has affirmatively represented that it does not now run its "Most Advanced Equipment" advertising, and that it does not intend to conduct such an advertising campaign in the future. Therefore, any claim for injunctive relief would be unavailable to the Defendant and, as the Defendant concedes, no actual injury, that is relatable to this advertising, can be shown so as to advance a claim for monetary damages. We, therefore, recommend that the Plaintiff's Motion for Summary Judgment, on this facet of the Defendant's Amended Counterclaim, be granted.

v. *The Plaintiff's Motion for Summary Judgment on the Defendant's "Exclusivity" Claims.*

 The Plaintiff markets two products which it sells under a trademark. The first

is the Plaintiff's "Featherwate" lens, which is a polycarbonate eyeglass lens, while the second is the Plaintiff's "ByLines No–Line Bifocals," which are no-line bifocal lenses. The Plaintiff advertises these products as being available "exclusively" or "only" at its retail outlets. The parties agree that polycarbonate lenses, and no-line bifocal lenses, are available, under a variety of product names, at the retail outlets of the Plaintiff's competitors, including those owned and operated by the Defendant. For this reason, the Defendant argues that the advertising, which references the "exclusive" availability of the "Featherwate" and "ByLines No–Line Bifocals" at the Plaintiff's stores, is literally false, or is literally true, but misleading. We are not so persuaded.

 In this respect, we agree with the Plaintiff that no reasonable Juror could conclude that the challenged advertising is literally false, because the two products specifically referenced in the advertising are trademarked and, therefore, are not available from any other outlet than the Plaintiff's. Nor is there any evidence to suggest, let alone establish, that this advertising is literally true, yet misleading. On this score, the only evidentiary showing, that has been offered by the Defendant, is contained in the affidavit of one of its employees, which contains the following pertinent averments:

> In the course of my employment, I have learned that the public and many new Vision World trainees perceive LensCrafters' Featherwate and ByeLine [sic] products as being totally exclusive; that is, they do not believe the generic form of these products is available at any other optical retailer, including Vision World.
>
> The public and trainees usually express surprise that Vision World and other optical retailers sell identical products as LensCrafters (e.g.—Featherwate is only a polycarbonate lens).

*Affidavit of Ken Condon,* at ¶¶ 3–4.

In our considered view, however, these averments merely evidence a lay person's confusion concerning the attributes of a patented product, and those of a product which is sold under a trademark. A patent vests its holder with the right to exclude others from making, using or selling its invention, and the patent holder exclusively reserves the right to license others to make, use or sell it. See, *Black's Law Dictionary,* at page 1125 (6th Ed.), citing *Valmont Industries, Inc. v. Yuma Mfg. Co.,* 296 F.Supp. 1291, 1294 (D.Colo.1969). A trademark, on the other hand, is a distinctive mark of authenticity, by means of which the products of particular manufacturers, or the vendible goods of particular merchants, may be identified and distinguished from the similar products of others. See, *Id.* at 1493, citing *In re Trade-Mark Cases,* 100 U.S. 82, 87, 25 L.Ed. 550 (1879), and *Koppers Co., Inc. v. Krupp–Koppers,* 517 F.Supp. 836, 840 (D.Penn.1981). Indeed, the right to use a trademark is granted by the Federal Government, on an exclusive basis, for a specified period of time. See, *Title 15 U.S.C. §§ 1058 and 1059.*

Here, there has been no showing that the trademarks, which the Plaintiff holds on its "Featherwate" and "ByLine" products, are invalid and, therefore, in advertising these products as being available "exclusively" at its retail stores, the Plaintiff has merely exercised its right to market the exclusive availability of these specific products, for which it holds the legal entitlement to sell as so trademarked. As a result, the attestations, which are contained in the Condon Affidavit, merely evince a consumer's reaction to a lawful marketing practice, and not some reaction to illegal and misleading advertising.

Moreover, we agree with the Plaintiff that its representations concerning the "exclusive" availability of these products are, at their worst, exaggerated and overgeneralized puffery. See, e.g., *Gordon & Breach Science Publishers S.A. v. American Institute of Physics,* supra at 182 (holding that statements proclaiming "the most cost-effective prices" and "subscription prices as low as possible" were puffery); *Data Cash Systems Inc. v. Js & a Group, Inc.,* 223 U.S.P.Q. 865, 867, 1984 WL 63623 (N.D.Ill.1984) (holding that claim of "newness" was a nonactionable "benign boast").

Accordingly, we recommend that the Plaintiff's Motion for Summary Judgment, on the Defendant's "exclusivity" claim, be granted.

### vi. *The Plaintiff's Motion for Summary Judgment on the Defendant's "Duralens" Claim.*

The Plaintiff markets a product which it has designated as the "Duralens." The Duralens is a scratch-resistant plastic eyeglass lens, which is manufactured by Essilor of America, Inc. ("Essilor"), one of the two largest manufacturers of eyeglass lenses in the United States. *LensCrafters, Inc. v. Vision World, Inc., Memorandum and Order,* 931 F.Supp. 1462, 1464 (D.Minn.1996). Essilor has granted the Plaintiff the exclusive right to market the Duralens. *Id.* at 1465. The Plaintiff has focused an advertising program on the Duralens, in which it lauds the scratch-resistant properties of that lens. The Defendant has challenged, as literally false, three variations of this advertising.

The Defendant first objects to a television advertisement, which depicts an employee of the Plaintiff's, Tracy Sylvester ("Sylvester"), hand rubbing both the Duralens, and a "typical" scratch-resistant lens, with steel wool. *Affidavit of Geoffrey Jarpe, Exhibit C.* As Sylvester is rubbing the lenses, a written disclaimer appears on the television screen which states, "[a]ctual time two mins. per lens." *Id.* Sylvester then holds the two lenses up, side by side, to reveal the damage to each lens. The "typical lens" is conspicuously scratched, while the Duralens is unremarkable. *Id.* In displaying the two lenses, Sylvester proclaims "[n]o·other plastic lens is more scratch resistant than a Duralens." *Id.*[19]

The Defendant also challenges the Plaintiff's print and in-store advertising of Duralens. A representative example of this advertising contains three photographic images, which depict two lenses, one a "typical" scratch-resistant lens, and the other the Duralens. *Id., Exhibit B.* The top image displays each lens, side by side, after they have,

assertedly, been rubbed with steel wool. The "typical" lens was pronounceably scratched while the Duralens was free of abrasions. Above this image is the caption: "New Dura-lens. The Most Scratch Resistant Plastic Lenses Ever * * * Only at LensCrafters." Beneath this depiction is the captioned statement: "Duralens—Even stands up to steel wool." *Id.* The remaining two photographs are positioned, side by side, with the right-hand picture displaying a lens being rubbed with steel wool, while the left-hand portrayal depicts Sylvester holding a lens, presumably the Duralens. *Id.*

The last Duralens advertisement, which is challenged by the Defendant, is contained in one of the Plaintiff's brochures, which declares the virtues of the Duralens. *Id., Exhibit J.* This brochure includes the following statement, which the Defendant finds objectionable: "Duralens. The comfort of plastic with the durability of glass." *Id.*

The Defendant attacks each of these advertisements in its Amended Counterclaim, and it has unsuccessfully sought a preliminary injunction, which would have enjoined the further use of this advertising, pending the resolution of this action. By Order dated March 5, 1996, the District Court, the Honorable Michael J. Davis presiding, denied the claim for a preliminary injunction. *LensCrafters, Inc. v. Vision World, Inc., Memorandum and Order,* supra. The Defendant is currently appealing this Order to our Court of Appeals. See, *Affidavit of Stephen E. Yoch,* at pages 4–39 (Defendant's Appellate Brief).

■ As noted, the Defendant insists that this advertising campaign contains a number of statements of fact which are literally false. First, the Defendant maintains that the message of the Duralens television commercial is literally false because the visual representation of the two lenses is not consistent with

---

**19.** The full spoken text of this advertisement is as follows:

I see a lot of people that put up with scratched lenses. And a scratched lens means they're not seeing properly, and for me that's a real problem. LensCrafters' new Duralens can help make that problem go away. This is steel wool on a typical scratch-resistant lens. And this is a Duralens.

No other plastic lens is more scratch resistant than a Duralens. Only LensCrafters has them and even they will be ready in about an hour. Duralens has helped me help people see better, and I feel really good about that.

Lenscrafters, helping people see better, one hour at a time.

*Affidavit of Geoffrey Jarpe, Exhibit C.*

the underlying test results, upon which the advertising was premised. We disagree.

▆] Where, as here, a party challenges advertising which makes a claim of "test-proven superiority," the challenging party bears the burden of demonstrating that the referenced tests are not sufficiently reliable to permit one to conclude, with reasonable certainty, that they establish the contention for which they were cited. See, e.g., *Castrol, Inc. v. Quaker State Corp.,* 977 F.2d 57, 62–63 (2nd Cir.1992); *Procter & Gamble Co. v. Chesebrough–Pond's, Inc.,* 747 F.2d 114, 119 (2nd Cir.1984); *L & F Products v. Procter & Gamble Co.,* 845 F.Supp. 984, 1000 (S.D.N.Y. 1994), aff'd, 45 F.3d 709 (2nd Cir.1995). Here, with respect to the television advertising, the Plaintiff has offered no evidence which could lead a reasonable Juror to conclude that the tests at issue were unreliable.

The Plaintiff bases its scratch-resistant claim in the television advertisement upon an actual comparison test, that was performed by Sylvester, and was captured on videotape—a copy of which has been furnished to the Court. *Affidavit of Geoffrey Jarpe, Exhibit E.* In this testing, Sylvester first rubbed a "typical" lens with steel wool, and then applied the same treatment to a Duralens. Each lens was rubbed for two minutes and, by all appearances, when rubbing the lenses, Sylvester used the same motion and force that she employed when rubbing the lenses in the Duralens television advertisement. After the lenses were rubbed, Sylvester then displayed them for the camera, both individually and side-by-side. While both lenses were smudged as a result of the testing, the Duralens remained unscratched, while the "typical" lens revealed significant scratching and gouging—a result that was is consistent with the damaged condition of the "typical" lens that was depicted in the advertisement. Accordingly, the visual portrayal of the television advertisement accurately corresponds with the visual results of the underlying test.

Indeed, the Defendant does not offer any evidence which impugns the reliability of the testing. Rather, Sylvester has attested that, when rubbing the lenses, she made every effort to "treat the two lenses in the same way," and she avers that the advertisement "fairly depicts both the process by which the lenses were rubbed and the results of the rubbing." In addition, Sylvester avows that, "[a]fter each lens was rubbed, there was a clear visible difference between the appearance of the Duralens and the competing lens." *Declaration of Tracy Sylvester,* at ¶¶ 3–6. According to the Plaintiff, the Duralens television commercial has undergone and satisfied the substantiation program that is required by each of the three major American television networks, and that is employed by the Canadian Bureau of Competition Policy. *Declaration of Mildred A. Curtis,* at ¶¶ 3–4 and *Exhibits A–C.*

In addition, the Plaintiff maintains in-store displays which invite customers to replicate the steel wool test themselves, by rubbing steel wool over the Duralens and over a comparable lenses. *LensCrafters, Inc. v. Vision World, Inc., Memorandum and Order,* supra at 1464. Accordingly, if the results depicted in the advertisement did not conform with the testing, then customers would be readily able to ascertain that fact for themselves by their own direct testing. Nevertheless, as vouched by the Plaintiff, in the more than one year period since the Duralens first entered the market, the Plaintiff has received no complaints from its customers concerning the scratch-resistant properties of the Duralens. *Id.* at 1467 n. 8. For these reasons, the Defendant's false advertising claims, relative to the Duralens television advertisement, are without merit, and the Plaintiff is entitled to Summary Judgment on this portion of the Defendant's Amended Counterclaim.

▆ Next, the Defendant contends that two statements, which are contained in the Plaintiff's print Duralens advertising—specifically, the statements that "Duralens even stands up to steel wool," and that "the Duralens is the Most Scratch Resistant Plastic Lens Ever"—are literally false. Again, we conclude that the Defendant has offered no evidence to support this assertion and, indeed, the pertinent evidence confirms that the Duralens does "stand up to steel wool." At the conclusion of the Sylvester's test— which served as the underlying trial for this

advertisement—the Duralens remained unscratched. While the Defendant makes much of the smudging that the test procedure visited upon both lenses,[20] this smearing is of no relevance, as the Plaintiff advertises and markets the Duralens as a "scratch resistant lens," and not as a "smudge resistant lens." Indeed, while the Defendant highlights Sylvester's comment, following the test, that the Duralens was "really smudged," it conveniently ignores her immediately following remark that the Duralens was "definitely not scratched." *Affidavit of Geoffrey Jarpe, Exhibit E.*

Here, the Defendant has not provided any competent evidence which would suggest that the Plaintiff's claim, that the Duralens is "the most scratch resistant plastic lens ever," is literally false and, frankly, we are somewhat baffled as to why the Defendant even raised this claim in the first place. The Plaintiff has based its "scratch-resistance" claim on three series of tests, which Essilor conducted, and which compared the scratch-resistant qualities of the Duralens with those of the four other leading scratch-resistant plastic lenses.[21] These included, first, the "Bayer" test, which demonstrated that the Duralens was "clearly superior" to any competitive lens; second, the abrasion or "Tumble" test, in which the Duralens outperformed three of its four competitors; and, an inconclusive steel wool test. *LensCrafters, Inc. v. Vision World, Inc., Memorandum and Order,* supra at 1464–65. Based upon these tests, the Plaintiff has legitimately claimed that the Duralens is the most scratch-resistant lens on the market and, indeed, the Defendant concedes as much in the following excerpt from its brief to our Court of Appeals:

> Concededly, Duralens did perform better than the other lenses in Essilor's Bayer Test. If LensCrafters ran advertisements saying that Duralens was the top Bayer Test performer and used a depiction of that test, Vision World would have no objection. However, LensCrafters chose a

steel wool test, a test where it fails to demonstrate any superiority over other major scratch-resistant lenses. This was improper.

*Affidavit of Stephen E. Yoch, at page 30 (Defendant's Appellate Brief, at 16 n. 21).*

This argument, when viewed in a most charitable light, does little to counter the plain showing that the testing, which undergirded the Plaintiff's proclamation of scratch-resistance superiority, actually supports that claim. Nor can the Defendant escape its own acknowledgement, that the Plaintiff's claim of the Duralens' superior scratch-resistance, is literally true. For these reasons, both of the Defendant's challenges to the statements, that are contained in the Plaintiff's Duralens print advertising, must fail.

▇▇▇ The Defendant continues by arguing that the "Tru–Tint" lens, which was the "typical" lens used in the Sylvester steel wool tests, was not, in fact, a "typical," scratch-resistant, plastic lens. Accordingly, the Defendant argues that the advertising portrayal of the Tru–Tint as "typical" is literally false. However, since the Defendant has offered no evidence to suggest that the Tru–Tint is not a "typical," scratch-resistant, plastic lens, we find this argument to be unavailing.

In this respect, the Plaintiff—which is the undisputed "giant" of the American retail optical industry—has introduced uncontroverted evidence that it sells over one million Tru–Tint lenses per year, and that this figure is larger than its sales of any other type of scratch-coated plastic lenses. *LensCrafters, Inc. v. Vision World, Inc., Memorandum and Order,* supra at 1469. The Defendant attempts to counter this showing by arguing that the Tru–Tint is not a "typical," scratch-resistant, plastic lens because it is a "finished" lens and, consequently, is largely unsuitable for the majority of eyeglass wearers who are over 45 years of age—the segment of the consumer market which comprises 50% of the eyeglass wearing population, and

---

20. The Defendant has asserted, without contradiction, that this "smudging" reflects a breakdown of the lenses' surface that resulted from being rubbed by the steel wool. *LensCrafters, Inc. v. Vision World, Inc., Memorandum and Order,* supra at 1467.

21. It appears to be undisputed that these tests enjoy the acceptance of the optical industry. *LensCrafters, Inc. v. Vision World, Inc., Memorandum and Order,* supra at 1464–65.

the majority of whom require multifocal, "semi-finished" lenses.

Accepting this argument as true, however, does not lead to the conclusion that the Tru–Tint is not a "typical," scratch-resistant lens, especially given the Plaintiff's undisputed evidence to the contrary. Notably, in its Duralens advertising, the Plaintiff presents the Tru–Tint as *a* "typical" scratch-resistant lens, not *the* "typical" scratch-resistant lens. Indeed, the Defendant appears to recognize this distinction in its appellate briefing:

> The SuperShield [a multifocal, scratch-resistant plastic lens] *is just as typical for 50% of eyeglass wearers as the Tru–Tint lens is for the other 50%.*

*Affidavit of Stephen E. Yoch,* at page 32, (*Defendant's Appellate Brief,* at 18) [emphasis supplied].

As a result, we conclude that the Defendant has introduced no evidence which legitimately suggests that the Plaintiff's representation of the Tru–Tint, as a "typical" scratch-resistant lens, is literally false and, therefore, its claim on this score must fail as well.

 Finally, the Defendant contends that the statement, in the Plaintiff's brochure, that the Duralens has "the comfort of plastic with the durability of glass," is literally false. Again, finding no evidence to support this assertion, we must disagree. Indeed, we fully concur in the District Court's telling observation:

> Moreover, Vision World imputes a much stronger definition of the phrase "durability of glass" than is actually required. The term "durability of glass" does not require that the DURALENS be identical to or surpass glass in terms of durability; it simply connotes the idea that the durability of the DURALENS and glass be *comparable.*

*LensCrafters, Inc. v. Vision World, Inc., Memorandum and Order,* supra at 1468 [emphasis in original].

Here, the Plaintiff's testing has amply demonstrated the comparability of Duralens and glass. The Duralens outperformed glass in the Bayer Test, and it performed nearly as well as glass in both the Tumble and the steel wool tests. *Affidavit of Geoffrey Jarpe,*

*Exhibit A,* at 100041–42 and 100045. The Defendant has offered no evidence to question the reliability of any of these tests, or of the results obtained and, therefore, it has failed to satisfy its burden to rebut the Plaintiff's evidentiary showings in support of its Motion for Summary Judgment.

Therefore, upon our careful review of the Record before us, we find that the Defendant has failed to demonstrate the existence of any false or misleading statement of fact, in any of the Plaintiff's challenged advertisements. As the existence of such a false or misleading statement is an essential element for each of the Defendant's statutory causes of action, those actions cannot withstand the Plaintiff's Motion for Summary Judgment. Nor may the Defendant's common law, unfair competition claim survive the Plaintiff's Motion, since that claim does not identify its underlying tort, nor has the Defendant offered any evidence that it has suffered an actual injury resulting from the Plaintiff's allegedly unfair competition. See, *Zimmerman Group v. Fairmont Foods of Minnesota,* supra; *Multi–Tech. Sys., Inc. v. Hayes Microcomputer Products, Inc.,* supra at 848.

Accordingly, we recommend that the Plaintiff's Motion for Summary Judgment, on the Defendant's Amended Counterclaim, be granted in its entirety.

NOW, THEREFORE, It is—

RECOMMENDED:

1. That, as more fully detailed in the text of this Report and Recommendation, the Defendant's Motion for Partial Summary Judgment, on the Plaintiff's Amended Complaint [Docket No. 44], be granted in part, and denied in part.

2. That the Plaintiff's Motion for Summary Judgment, on the Defendant's Amended Counterclaim [Docket No. 70], be granted.

### Notice

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D.Minn. LR1.1(f), and D.Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than September 9, 1996,** a writing which specifically identifies

those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than September 9, 1996,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. § 636 to review the transcript in order to resolve all of the objections made.