LensCRAFTERS, INC., Plaintiff and
Counterclaim Defendant,

v.

VISION WORLD, INC., Defendant
and Counterclaimant.

Civil No. 3–95–137.

United States District Court,
D. Minnesota,
Third Division.

March 5, 1996.

Geoffrey P. Jarpe, Seth M. Colton, Jarett B. Decker, and Stephen E. Yock, Maun & Simon, St. Paul, MN, David L. Bishop, Bishop Law Office, Falcon Heights, MN, for defendant Vision World, Inc.

Peter M. Lancaster, James C. Burroughs, and Joshua J. Burke of Dorsey & Whitney, Minneapolis, for plaintiff LensCrafters.

## MEMORANDUM AND ORDER

DAVIS, District Judge.

This matter came before the Honorable Michael J. Davis on February 9, 1996 upon defendant and counterclaimant, Vision World, Inc.'s ("defendant" or "Vision World") motion for a preliminary injunction. For the reasons set forth below, Vision World's motion is *denied* in its entirety.

## FACTUAL BACKGROUND

Plaintiff and counterclaim defendant, LensCrafters, Inc. ("LensCrafters") and defendant and are both in the business of manufacturing and selling prescription eyeglasses. Vision World is a Minnesota corporation and currently has 34 retail locations in Minnesota and border states. LensCrafters, a subsidiary of the Italian company, sells its products at over 600 retail locations throughout the United States as well as various foreign countries. Both companies sell a version of scratch-resistant eyeglasses which are specially formulated to prevent scratches and abrasions.

In 1992, LensCrafters alleges that it initiated a joint research and development effort with Essilor of America, Inc., ("Essilor"), one of the two largest manufacturers of eyeglass lenses in the United States, to develop a scratch-resistant lens that would fully satisfy consumer demand. After developing a product that Essilor believed complied with this demand, it engaged in a number of comparative scratch tests principally with Essilor's own TRU–TINT product. Plaintiff alleges that Essilor recognized from these tests that its product was not *the* most scratch-resistant lens available, but was instead a typical scratch-resistant lens.

Plaintiff alleges that Essilor then ran further tests with the DURALENS product against four other lenses: (1) Essilor's own SUPERSHIELD; (2) the leading scratch-resistant lens sold by SOLA, Essilor's largest competitor; (3) the leading scratch-resistant lens sold by a company known as Vision Ease; and (4) Signet Armorlite's RLXPlus. Based upon the results of these tests, plaintiff alleges that Essilor found DURALENS to be *the* most scratch-resistant lens. Plaintiff contends that three separate tests were used to reach that conclusion, each of which has been accepted by an international committee of experts formed by the International Standards Organization ("ISO"): (1) the "Bayer" test [1] which demonstrated that DURALENS is, according to plaintiff, "clearly superior" to any competitive lens; (2) the abrasion or "Tumble" test [2] which showed DURALENS to be superior to all lenses other than Essilor's SUPERSHIELD product [3]; and (3) a steel wool test [4] which showed the differences among the five lenses to be statistically insignificant.

Plaintiff then entered into an exclusive marketing agreement with Essilor in order to market the DURALENS. It developed television and print advertising to focus upon what plaintiff characterizes as the "principal conclusions of Essilor research"—that DURALENS is the most scratch-resistant lens available and that rubbing steel wool demonstrates "clear differences" between a typical scratch-resistant lens such as TRU–TINT and the DURALENS. The television advertising commenced in November 1994 and depicts a LensCrafters' employee, Tracy Sylvester, hand rubbing the DURALENS with steel wool and a "typical" scratch-resistant lens. Ms. Sylvester then holds the two lenses up side by side to reveal the damage to each lens and states, "No other lens is more scratch resistant than Duralens."

---

1. The Bayer test involves placing a lens into a pan of sand that oscillates back and forth a standard distance and a standard number of times. Declaration of John Young ("Young Dec."), ¶ 12(a).

2. This test involves "tumbling" a lens which has been placed in a short barrel filled with a variety of abrasive materials at a standard rate for a standard time. Young Dec., ¶ 12(b).

3. As to the Essilor product, plaintiff contends that no statistical difference was shown in scratch resistance.

4. The Steel Wool test, the premise of defendant's motion for injunction, involves a test in which a pad of steel wool is rubbed against a lens and attached to any arm that oscillates in a back-and-forth motion at a standard pressure and standard number of strokes.

Plaintiff also began print and in-store ads in the Minneapolis area in February 1995. Comparative displays were set up in LensCrafters' stores with posters featuring Ms. Sylvester and other images similar to those in the television commercials. In addition, in-store displays were made which invite customers to rub steel wool over the surface of the DURALENS and comparable lenses. They have continued to be used since that time.

On or about February 13, 1995, LensCrafters served a complaint on Vision World alleging in part that Vision World's advertising contained false, deceptive and/or misleading comparative claims about LensCrafters' prices and products. Vision World then filed an Answer and Counterclaim denying LensCrafters' allegations and asserting numerous claims against LensCrafters. In particular, Vision World alleged that a LensCrafters' advertising campaign pertaining to a new series of scratch-resistant lenses called "DURALENS" was misleading, contrived and untrue and amounted to false advertising.

On October 23, 1995, defendant first demanded that the advertising be stopped for a number of reasons. First, Vision World alleged that the advertising was false and misleading because the lenses in the commercial did not show any damage to the DURALENS even though Essilor's research indicated that some damage did occur to the DURALENS in the testing and research process. Second, Vision World alleged that the allegedly comparable lens used in the commercial was a product which was not designed to be particularly scratch-resistant and was, therefore, a false comparison. Third, Vision World alleged that it was "disparaged" by LensCrafters' advertising campaign and that it would suffer irreparable harm from lost sales unless the advertising campaign was discontinued.

LensCrafters alleges that the defendant is unlikely to succeed on the merits because LensCrafters' claims about the DURALENS product are true and because Vision World was not harmed by the advertisements. Vision World seeks a preliminary injunction pursuant to 15 U.S.C. § 1114 and rule 65 of the Federal Rules of Civil Procedure in order to prevent LensCrafters from advertising its DURALENS product through comparison or by referencing "scratch protection," "scratch resistance," or the "steel wool" test. For the reasons set forth below, this Court finds that Vision World is not entitled to enjoin LensCrafters from the further utilization of the DURALENS advertising campaign and therefore denies the preliminary injunction.

## DISCUSSION

The Eighth Circuit has established the following analysis to be used in considering a preliminary injunction motion:

[W]hether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties' litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest.

*Dataphase Sys., Inc. v. C.L. Sys., Inc.*, 640 F.2d 109, 113 (8th Cir.1981); *accord Medtronic, Inc. v. Gibbons*, 527 F.Supp. 1085, 1090 (D.Minn.1981), *aff'd*, 684 F.2d 565 (8th Cir.1982). Whether a motion for preliminary injunction should be granted rests with the sound discretion of the Court. *Calvin Klein Cosmetics Corp. v. Parfums de Coeur, Ltd.*, 824 F.2d 665, 667 (8th Cir.1987). In weighing these factors, no single factor is dispositive; rather, all of the factors must be considered in determining whether on balance they tip toward granting injunctive relief. *Id.*

### Likelihood of Success on the Merits

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), prohibits the use of false or misleading statements in commercial advertising. Establishing a violation of § 43(a) requires proof of the following factors: (1) defendant made false statements of fact about its own products or plaintiff's products in its advertisement; (2) those advertisements actually deceived or have the tendency to deceive a substantial segment of their audience; (3) the deception is material because it is likely to influence buying decisions; (4) defendant caused its falsely adver-

tised goods to enter interstate commerce; and (5) plaintiff has been or is likely to be injured as a result of these activities either through direct diversion or sales from plaintiff to defendant, or by injuring the goodwill its products enjoy with the buying public. *Alternative Pioneering Systems, Inc. v. Direct Innovative Products, Inc.*, 822 F.Supp. 1437, 1441–42 (D.Minn.1993). In order to prove that defendant made false statements of fact about its product or plaintiff's product, plaintiff must demonstrate that the statements made in the ad are either literally false or the representations, although true, are likely to mislead consumers. *Id.* at 1442.

## A.

██ Defendant first argues that LensCrafters engaged in "literally false" advertising by representing that the DURA-LENS is vastly superior to its competitors using the steel wool test. In support of this argument, Vision World relies upon Essilor's finding that the difference among the five leading scratch-resistant lenses using the steel wool test is statistically insignificant. Defendant further argues that LensCrafters then decided to conduct a steel wool test using the TRU–TINT lens which defendant claims is softer and presumably more susceptible to scratching with steel wool. Defendant then cites tests of its own which demonstrate that the multi focal DURALENSES are far *less* susceptible to scratching by steel wool than competitive products. Affidavit of Roy R. Ferguson, Ph.D., ¶ 23–24.

As a preliminary note, the Court disagrees with Vision World's reliance upon the steel wool test among the five leading scratch-resistant lenses for the simple reason that that test does not form the basis of LensCrafters' conclusions in its ad. In fact, LensCrafters readily admits in its memorandum opposing the preliminary injunction that "The results of the steel wool test *could not clearly distinguish* among the five most abrasion-resistant lenses, though it had dis-

tinguished between the DURALENS and TRU–TINT." Plaintiff's Memorandum, p. 5 (emphasis added). John Young, an independent consultant with IPI associates, stated that Essilor's previous comparison between the DURALENS and the TRU–TINT did, in fact, reveal "measurable differences" between the two. It is that test that forms the basis of LensCrafters' ad, not the test involving the five leading scratch-resistant lenses.

Additionally, a review of the advertisements [5] reveals nothing literally false or even misleading about the reference to steel wool. The ads depict two lenses—a "typical" scratch resistant plastic lens rubbed with steel wool and the DURALENS plastic lens rubbed with steel wool. Beneath the two lenses, it states "DURALENS®—Even stands up to steel wool." Beneath this caption is a picture of a lens being rubbed with steel wool. The ad compares the DURA-LENS to a typical scratch resistant lens, not one of the five most scratch resistant lenses available. The ad does not profess superiority over *any* lens when applying steel wool as Vision World seems to argue; in fact, that is not even implied. Nor does the ad imply that any steel wool test will undoubtedly show that the DURALENS is the most scratch-resistant lens.[6] The ad merely states that the DURALENS "stands up to steel wool" and then demonstrates the superiority of the DURALENS over a "typical" scratch-resistant lens, an assertion which LensCrafters supports with ample evidence.

Vision World also argues that LensCrafters introduced the TRU–TINT lens which Vision World argues is a softer lens after LensCrafters did not receive favorable results from the five leading scratch resistant lenses. This Vision World characterizes as "blatantly manipulative and improper."

The Court disagrees. Even accepting as true for the moment Vision World's argument that the TRU–TINT lens is softer, that in and of itself, does not render LensCraft-

---

5. In proceeding upon a motion for preliminary injunction, visual inspections by the Court are permissible in evaluating likelihood of confusion. *Calvin Klein Cosmetics Corp. v. Lenox Laboratories, Inc.*, 815 F.2d 500, 503 (8th Cir.1987).

6. For this reason, defendant's reliance upon its own tests, i.e., the Signet Armorlite 3M test, the Huntingdon Engineering tests, and the Sola Steel Wool test also fail to undermine the validity of LensCrafters' ad.

ers' ad false or even misleading. Again, the ad clearly states that the lens being compared to the DURALENS is a "typical" scratch resistant lens and then shows the DURALENS resisting the pressure of steel wool. Vision World does not rebut the proposition that the DURALENS is, in fact, superior to the TRU–TINT lens when subjected to the steel wool test nor does Vision World argue that the DURALENS reveals permanent scratches when rubbed with steel wool. Finally, Vision World fails to cite any authority demonstrating that an advertisement of this type comparing an attribute of a particular company's product to that of a "typical" product is legally impermissible.

### B.

■ Vision World next argues that the presentation of the comparison between the DURALENS and the typical scratch-resistant lens is also false. Vision World points to a number of alleged inaccuracies in the ad which it contends are false or misleading because the advertisement either overstates the effect of rubbing the steel wool against the typical lens or understates the effect of rubbing the steel wool against the DURALENS. Specifically, Vision World alleges that the advertisement does not accurately portray the "smudging" or "smearing", i.e., the breakdown of the lens surface that creates a milky film on the surface of the lens, of the DURALENS when rubbed against the steel wool. Furthermore, Vision World argues that a typical lens will not display the scratches as demonstrated on the TRU–TINT lens and also inaccurately depicts the length of time that the steel wool is rubbed against the lenses.

Even accepting these allegations as true[7], the Court does not find that they render the advertisement literally false. One of the main purposes of the advertisement is to demonstrate that the DURALENS is a more scratch-resistant lens than the TRU–TINT lens when rubbed with steel wool. Defendant's allegations regarding the overstated or understated effect of the steel wool do nothing to refute this message. Most importantly, these allegations do not undermine the fundamental premise of the advertisement, i.e., that a typical lens will reveal *permanent* scratches when rubbed with steel wool whereas the DURALENS will not.

■ Nor does the Court find the alleged inaccuracies in the advertisement to be materially misleading. To enjoin an ad which is implicitly false, i.e., materially misleading, a court must conclude that the ad is confusing or deceiving based upon public reaction. *Smithkline Beecham v. Johnson & Johnson–Merck,* 906 F.Supp. 178, 180 (S.D.N.Y.1995), *aff'd,* 1996 WL 37325 (2d Cir.1996). Defendant has failed to proffer any evidence demonstrating that the smearing of the DURALENS or the "gouges" in the TRU–TINT lens actually deceived or have the tendency to deceive a substantial segment of their audience.[8]

Vision World does proffer a consumer survey showing that only 23% of those viewing the television commercial understood that the lenses displayed had been rubbed for two minutes. But this statistic, standing alone, does not compel a conclusion that the commercial is misleading pursuant to section 43(a) of the Lanham Act. Vision World must also show that this misperception has a material effect upon the consumer's decision to purchase the DURALENS. *Id.* Vision World has failed to establish that the length of rubbing would adversely impact upon a consumer's decision to purchase the DURALENS. *See e.g., L & F Products v. Procter & Gamble Co.,* 845 F.Supp. 984, 1003 (S.D.N.Y.1994), *aff'd,* 45 F.3d 709 (2d Cir.1995) ("Even assuming that the commercials did imply that they depicted the actual clean-

---

7. LensCrafters does not directly refute Vision World's allegations regarding the smearing of the DURALENS or the inaccurate degree of scratching on the typical lens.

8. In fact, LensCrafters' in-store displays indicate that these alleged flaws in the advertisement are neither deceptive nor material. LensCrafters allow consumers to replicate the test illustrated in

the commercial by rubbing steel wool against the TRU–TINT lens as well as the DURALENS. According to affidavits submitted by LensCrafters, the marketing campaign for the past year describing the DURALENS' superior scratch-resistant capabilities has yielded no complaints of the type which Vision World describes.

ing efforts, L & F has failed to demonstrate how this perception would be material to a consumer"). Moreover, Tracy Sylvester, the LensCrafters optician who performed the test, stated that she did her best to treat the two lenses in the same way and that the thirty-second commercial fairly depicts the process by which the lenses were rubbed. Declaration of Tracy Sylvester, ¶ 4. She further stated that "After each lens was rubbed, there was a clear visible difference between the appearance of the DURALENS and the competing lens." Sylvester Dec., ¶ 5. The Court finds Vision World's contentions regarding the foregoing inaccuracies of the advertisement without merit.

### C.

■ Vision World next argues that LensCrafters' reference to "the comfort of plastic with the durability of glass!" is false. A plaintiff seeking to prove false the statement "tests show x" can meet its burden of proof by showing that the tests referred to are not sufficiently reliable to permit one to conclude with reasonable certainty that the test establishes the proposition for which it stands. *Procter & Gamble Co. v. Chesebrough–Pond's Inc.*, 747 F.2d 114, 119 (2d Cir.1984). An examination of the Bayer test, a reliable test used by the ISO, demonstrates that the DURALENS does, in fact, perform better than glass in terms of durability. Jarpe Aff., Ex A at 100041. Vision World offers no evidence demonstrating the invalidity or unreliability of the Bayer test. Accordingly, the Court does not find that this claim to be literally false under the provisions of the Lanham Act.

Moreover, Vision World imputes a much stronger definition to the phrase "durability of glass" than is actually required. The term "durability of glass" does not require that the DURALENS be identical to or surpass glass in terms of durability; it simply connotes the idea that the durability of the DURALENS and glass be *comparable*. Both the Tumble test as well as the steel wool test demonstrate this comparability. Jarpe Aff. Ex. A at 100042 and 100045.

### D.

■ Vision World also objects to LensCrafters' use of a tintable lens such as the TRU–TINT because, according to Vision World, the comparison is not one of "apples to apples." Vision World argues that the term "typical scratch-resistant lens" is misleading because the term fails to account for what Vision World terms a "harder, untintable lenses." According to Vision World, DURALENS is made of a hard non-tintable coating while the TRU–TINT lens was designed to be permeable and contains a softer, scratch-protective coating capable of absorbing dye. Vision World further argues that LensCrafters selected the TRU–TINT lens as a basis for its comparison to the DURALENS because two of the three tests conducted by Essilor failed to demonstrate the superiority of the DURALENS to other scratch-resistant lenses. Because consumers are allegedly unaware that the DURALENS is not being compared to a tinted lens, Vision World concludes that such a comparison misleads the public into believing that other scratch-resistant lenses are extremely susceptible to scratching.

The Court disagrees with both Vision World's premise as well as its conclusion. Vision World proffers a rather myopic view of the correlation between the strength of a lens and its propensity for tintability. Vision World ignores the deposition of its own witness, Daniel Torgerson, who explicitly states:

> If you are talking about the lens material and the hardness or softness of the lens material, you need to confine the question to a single type of lens material. For example, polycarbonate is a very soft lens material, and it will not accept a tint. CR39 is *considerably harder* than polycarbonate, and it *will* tint very nicely.

Deposition of Daniel Torgerson, p. 48. Given this testimony, the Court finds Vision World's argument regarding the "apples to non-apples" comparison involving non-tintable and tintable lenses somewhat blurry.

Additionally, Vision World proffers absolutely no evidence to refute the characterization of the TRU–TINT lens as a "typical" scratch resistant lens. Simply because the TRU–TINT may contain a softer coating

than the DURALENS does not mean that the TRU–TINT lens is not a typical scratch-resistant lens. LensCrafters, on the other hand, provides significant evidence to bolster its assertion regarding the status of the TRU–TINT lens as "typical" of scratch-resistant lens. Young Dec., ¶ 25. Tim Reynolds, a manager for research and development for LensCrafters, states that:

> In LensCrafters' television, print, and in-store comparative advertisements, the DU-RALENS is compared to a "typical" scratch resistant lens. That lens, called TRU–TINT, is the standard scratch-resistant coating LensCrafters has sold with plastic lenses for a number of years ... LensCrafters sells over a million pairs a year of TRU–TINT lenses. LensCrafters sells more TRU–TINT lenses than it does any other type of scratch-coated CR–39 lenses. *TRU–TINT's scratch-resistance qualities are comparable even to those of some other lenses regarded as essentially non-tintable, such as the Vision Ease scratch-resistant lens.* For those reasons, we believe it to be a "typical" scratch-resistant lens.

Declaration of Tim Reynolds, ¶ 6 (emphasis added). Given these declarations and Vision World's failure to proffer any substantive evidence refuting this claim, the Court rejects defendant's objection to the status of TRU–TINT as a "typical" scratch resistance lens.

In sum, the Court does not find that Vision World has upheld its burden of demonstrating that a comparison between the DURALENS and the TRU–TINT lens is incomplete, unfair or misleading. Defendant proceeds upon a faulty premise that tintable lenses are, ipso facto, less scratch resistant than non-tintable lenses. As set forth above, the evidence demonstrates otherwise. Additionally, Vision World has provided the Court with no legitimate evidence demonstrating the invalidity or misleading nature of the TRU–TINT lens as a "typical" scratch-resistant lens.

#### E.

■ Vision World's eighth and final allegation concerns LensCrafters' representation of the DURALENS as a "vastly superior" product over any other scratch-resistant lens. Vision World argues that, even if the DURALENS is marginally superior, the advertisements are false and misleading given the impact upon the public. In support of this contention, Vision World relies upon statistics which demonstrate, among other things, that 66% of a group of individuals surveyed stated that they were more likely to purchase a DURALENS in the future as a result of the advertisement and 53% of those surveyed were less likely to purchase a "typical" scratch-resistant lens. As a result of this survey, Vision World concludes that well over one-half of those interviewed considered the DURALENS vastly superior.

■ A plaintiff satisfies his burden of proving the invalidity of a superiority claim by demonstrating that the tests referred to are not sufficiently reliable to permit one to conclude with reasonable certainty that they established the proposition for which they were cited. *Procter & Gamble Co. v. Chesebrough—Pond's Inc.,* 747 F.2d 114, 119 (2d Cir.1984). As set forth above, the Court finds that Vision World has failed to refute LensCrafters' contention that the DURALENS is a more scratch-resistant lens than the TRU–TINT lens. In fact, LensCrafters' tests provide ample evidence to support this contention.

■ Nor does the Court find LensCrafters' use of the term "vastly superior" rather than "mildly superior", "somewhat superior" or even "possibly superior" to be misleading for purposes of the Lanham Act. The fact remains that, as long as LensCrafters proves its basic premise, i.e., that the DURALENS *is more scratch resistant than the typical,* TRU–TINT lens, the characterization as "vastly" superior is nothing more than common marketplace sales talk or "puffery." Such exaggeration or overstatement expressed in broad, vague, and commendatory language does not violate the Lanham Act and is understood as an expression of the seller's opinion. *See e.g., Lipton v. Nature Co,* 71 F.3d 464 (2d Cir.1995) (statement by author of catalog that he "thoroughly researched dozens and dozens of animals" held

**1470**

to be mere "puffery" and not actionable); *Castrol v. Pennzoil Co.,* 987 F.2d 939, 945 (3d Cir.1993) (claim that Pennzoil's motor oil offered better protection against engine wear was general claim of superiority and thus not actionable); *Gordon and Breach Science Publishers, S.A. v. American Institute of Physics,* 905 F.Supp. 169, 182 (S.D.N.Y.1995) (language in advertisement stating "the most cost-effective prices" and "subscription prices as low as possible" is but general puffery, common to many advertisements and does not fall within section 43(a) of the Lanham Act).

*Balance of Hardships/Public Interest/Threat of Irreparable Harm*

 The Court finds that analysis of the remaining factors also weighs against granting this motion. Vision World has failed to demonstrate that it will be irreparably harmed as the Court does not find that LensCrafters' advertisements damage the reputation of other prescription eyeglass providers. The advertisement portrays the DURALENS as being a more scratch-resistant lens than the "typical" lens, not all lenses, or more specifically, Vision World's lenses. An advertisement can depict one product as being superior without depicting a competing product(s) as ineffectual. *L & F Products,* 845 F.Supp. at 996.

Additionally, the Court finds that the balance of hardships also precludes relief for Vision World. Enjoining LensCrafters from continuing to advertise its product which has been ongoing for more than a year would impose a significantly more onerous burden than any monetary harm to Vision World from potential lost sales. Finally, the Court does not find that the public interest will be served by enjoining Vision World's competitor from continuing to promote its product through legitimate advertising techniques. A thorough review of the record and all of the accompanying affidavits demonstrates that Vision World has failed to demonstrate that LensCrafters' television and print advertisements promoting the DURALENS are either literally false or misleading. Absent such proof, the Court cannot grant Vision

World the drastic and extraordinary remedy of a preliminary injunction. *Taxpayers' Choice Volunteer Committee v. Roseau County Board of Commissioners,* 903 F.Supp. 1301 (D.Minn.1995).

*ORDER*

Based upon the foregoing analysis and all of the files, records and proceedings, it is HEREBY ORDERED that defendant and counterclaimant, Vision World, Inc.'s motion for a preliminary injunction is *denied* in its entirety.