966 F.Supp. 1525 (1997)
In re GENERAL MOTORS CORPORATION ANTI-LOCK BRAKE PRODUCTS LIABILITY LITIGATION
No. MDL-1129.
United States District Court, E.D. Missouri, Eastern Division.
June 11, 1997.
*1526 *1527 *1528 John G. Simon, Jeffrey J. Lowe, Gray & Ritter, St. Louis, MO, David O. Danis, Danis, Cooper, Cavanaugh & Hartweger, St. Louis, MO, John J. Carey, Joseph P. Danis, Carey & Danis, St. Louis, MO, Joe C. Holzer, Butler & Binion, Houston, TX, Joseph W. Phebus, Phebus, Winkelman, Wong & Bramfeld, Urbana, IL, Melvyn I. Weiss, Patricia M. Hynes, Robert A. Wallner, Milberg, Weiss, Bershad, Hynes & Lerach, New York City, John M. Deakle, Janet L. Sims, Hattiesburg, MS, John M. Sims, Heidelberg, MS, Anthony Sakalarios, F. Marvin Morris, III, Morris and Sakalarios, Hattiesburg, MS, Stanley M. Grossman, D. Brian Hufford, Peter G.A. Safirstein, Pomerantz, Haudek, Block & Grossman, New York City, D. Michael Campbell, Miami, FL, Keith G. Liberman, Clayton, MO, Arnold Levin, Levin, Fishbein, Sedran & Berman, Philadelphia, PA, Gary E. Mason, Cohen, Milstein, Hausfeld & Toll, Washington, DC, Steve W. Berman, Hagens & Berman, Seattle, WA, Michael F. Ram, Leiff, Cabraser, Heimann & Bernstein, San Francisco, CA, Turner Branch, Branch Law Firm, Albuquerque, NM, Sam Heins, Heins, Mills & Olson, Minneapolis, MN, Marvin Blount, Marvin Blount Law Officies, Greenville, NC, Steven A. Martino, Jackson, Taylor & Martino, Mobile, AL, William M. Audet, Michael McShane, Alexander Law Firm, San Jose, CA, Ronald L. Burdge, Franklin, OH, Keen L. Ellsworth, Thomas A. Ericsson, Robert B. Gerard, Edwards, Olson, Waite & Wintest, Las Vegas, NV, for Plaintiffs.
David M. Harris, John E. Petite, Greensfelder, Hemker & Gall, St. Louis, MO, James H. Schink, Robert B. Ellis, David A. Coulson, J. Andrew Langan, Kirkland and Ellis, Chicago, IL, Terrence J. Galligan, Kirkland and Ellis, New York City, Greg J. Dow, Strasburger & Price, Houston, TX, David C. Thies, Richard L. Thies, Webber & Thies, Urbanan, IL, Lee A. Schutzman, Detroit, MI, J. Henry Ros, Page, Mannino, Peresich, Dickson & McDermott, Gulfport, MS, R. Benjamine Reid, Popham, Haik, Schnobrich & Kaufman, Miami, FL, John M. Kunst, Jr., Jeffrey P. Hinebaugh, Dinsmore & Shohl, Cincinnati, OH, for General Motors Company.
Frank N. Gundlach, Armstrong, Teasdale, Schafly & Davis, St. Louis, MO, Edward M. Kronk, Butzel, Long, Gust, Klein & Vanzile, Detroit, MI, Nancy Archer Yanochik, Joe W. Redden, Jr., Beck, Redden & Secrest, Houston, TX, William J. Brinkmann, Thomas, Mamer & Haughey, Champaign, IL, Robert M. Frey, Butler, Snow, O'Mara, Stevens & Cannada, Jackson, MS, Daniel E. Gonzalez, Lawrence P. Bemis, Steel, Hector & Davis, Miami, FL, for Kelsey-Hayes Company.

ORDER
NANGLE, District Judge.
Before the Court are two motions to dismiss the consolidated amended complaint in the above-captioned multidistrict litigation. The motions were filed by defendants General Motors ("GM") and Kelsey-Hayes ("KH"). For the reasons set forth below, defendants' motions to dismiss are granted in fill.

*1529 I. BACKGROUND

On October 8, 1996, the Judicial Panel on Multidistrict Litigation transferred six actions[1] to this Court for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. Several tag-alongs have followed. Plaintiff's filed a Consolidated and Amended Class Action Complaint ("Plaintiffs' Complaint") on January 13, 1997.[2] Plaintiffs' Complaint alleges that GM and KH jointly designed a dangerously defective anti-lock brake system ("ABS"), knew the ABS was defective, concealed this information from the public, and promoted the ABS as a highly effective safety device. Specifically, plaintiffs allege two defects: 1) the ABS system performs counter-intuitively because of a pedal-to-the-floor phenomenon[3] that causes the driver to think there has been a total brake failure[4] and 2) the ABS is an inferior anti-lock brake system which extends the distance needed for stopping, increasing the possibility of accidents.
Plaintiffs assert a total of six causes of action, five against both defendants and one solely against GM. The five claims against both defendants are for fraudulent misrepresentation, fraudulent concealment, breach of implied warranty, violation of state consumer protection statutes, and breach of implied warranty on behalf of the subclass.[5] The claim solely against GM is for breach of express warranty and/or breach of contract. Plaintiffs' Complaint explicitly disclaims "any intent to seek in this suit any recovery for personal injuries or property damage suffered or which may be suffered by any Class member." (Plaintiffs' Complaint at ¶ 21). Plaintiffs seek the following forms of relief: (1) compensatory damages for actual damages sustained; (2) an order directing defendants to recall or repair the ABS systems; (3) an order directing defendants to issue corrective disclosures; (4) punitive damages; and (5) attorneys' fees and costs. (Id. at 39-40). Defendants have moved to dismiss Plaintiffs' Complaint for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). Alternatively, defendants have moved to dismiss the claims for fraudulent misrepresentation, fraudulent concealment and violations of state consumer protection statutes for failure to plead with specificity pursuant to Fed. R.Civ.P. 9(b).

II. ANALYSIS

When ruling on a Rule 12(b)(6) motion to dismiss, a court must examine the complaint in the light most favorable to the non-moving party, accept the well-pleaded factual allegations as true and construe all allegations in favor of the plaintiff. Carney v. Houston, 33 F.3d 893, 894 (8th Cir.1994); Hamm v. Groose, 15 F.3d 110, 112 (8th Cir.1994); Kohl v. Casson, 5 F.3d 1141, 1148 (8th Cir.1993). A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); See also Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir.1995).

A. Failure to Plead Damages

Each defendant has moved to dismiss the complaint for the failure to adequately *1530 plead damages, an essential element of every cause of action. Plaintiffs have alleged that their vehicles "suffer from the defects." (Plaintiffs' Complaint at ¶ 10-15). It is undisputed that plaintiffs do not allege personal injury or property damage. (Plaintiffs' Complaint at ¶ 21). Plaintiffs' allegation of damage is for economic loss caused by paying more for the vehicles than they were worth and for economic loss stemming from lost resale value. (Id. at ¶ 99).
Plaintiffs' allegations of damages are conclusory and fall short of the pleading requirements for defective products. See, e.g., Hubbard v. General Motors Corp., 1996 WL 274018, *3 (S.D.N.Y.1996) (holding plaintiff must allege defect manifested itself in his or her product to state claim for relief); Lee v. General Motors Corp., 950 F.Supp. 170, 171-74 (S.D.Miss.1996) (dismissing plaintiffs' claims of inherently defective detachable fiberglass roofs for failure to plead sufficient damages); Barbarin v. General Motors Corp., 1993 WL 765821, *3 (D.D.C.1993) (dismissing claims of plaintiffs whose cars had not manifested defect); Yost v. General Motors Corp., 651 F.Supp. 656, 657 (D.N.J.1986) (holding design defect likely to cause damage did not state claim); Feinstein v. Firestone Tire & Rubber Co., 535 F.Supp. 595, 603 (S.D.N.Y.1982) (holding no cause of action for defect which never manifests itself); Khan v. Shiley Inc., 217 Cal.App.3d 848, 266 Cal. Rptr. 106, 110 (4th Dist.1990) (holding plaintiff with inherently defective heart valve did not state cause of action absent malfunction of valve). Plaintiffs do not allege that the defect manifested itself in their vehicles, i.e. they do not explain when, where or how their vehicles exhibited the defects.
Damages based on lost resale value have been rejected as inappropriate under a breach of implied warranty theory. See Carlson v. General Motors Corp., 883 F.2d 287, 297-98 (4th Cir.1989). In Carlson, the court upheld the dismissal of the claims of plaintiffs who had not had engine difficulties but had sought recovery for "lost resale value" because of the widespread problems with GM diesel products. Id. at 298. The plaintiffs in Carlson had acknowledged that the loss in resale value had resulted from the "poor reputation of the cars" rather than from a manifest defect in any of the cars which had experienced no problems. Id. at 291. The court held that the implied warranty of merchantability does not encompass a claim for loss of resale value. Id. at 297-98. The court specifically stated that it affirmed the district court's dismissal of "those plaintiffs who alleged damages attributable only to `lost resale value.'" Id. at 298. Like the plaintiffs in Carlson, the plaintiffs in this case cannot recover merely for economic loss.
Plaintiffs' statement that their vehicles "suffer from the defects" is not a sufficient allegation of damages. Plaintiffs' definition of the purported class reveals their true allegation of damage in this case. In their class definition, plaintiffs include "All persons ... who own or lease a model-year 1989-1996 GM vehicle equipped with an ABS system fabricated by Kelsey-Hayes," without limitation to persons whose vehicles have manifested the defect. In fact, plaintiffs state that "at the time of the sale of each automobile, the GM owner (and the general public) was exposed to potential of a brake failure." (Plaintiffs' Response Brief at 13)(emphasis added). It is clear from Plaintiffs' Complaint that they believe the vehicles were defective from the moment they came off the assembly line and that this fact, in and of itself, is behind their claims of damage. Manifestation of the defect in the vehicle, however, is a prerequisite to recovery. See, e.g., Hubbard, 1996 WL 274018, *3; Barbarin, 1993 WL 765821, *3.
Plaintiffs have also failed to allege economic harm with any sufficiency. They have merely alleged that they have suffered a loss of resale value and that they paid more for the vehicles than they were worth. There are no details surrounding these claims, as it appears no plaintiff has attempted to sell his or her vehicle. Plaintiffs cannot go forward with such speculative claims. Although dismissal of Plaintiffs' Complaint in its entirety is warranted for the failure to adequately plead damages, plaintiffs' claims fail to state a claim for relief for the following additional reasons.

*1531 B. Breach of Express Warranty/Breach of Contract  General Motors

1. Advertisements/Promotional Materials

Plaintiffs bring a claim for breach of express warranty/breach of contract solely against defendant GM. Plaintiffs allege that GM's advertisements and public promotions contained broad claims that the vehicles were safe from defects when, in fact, GM knew the ABS was defective. Consequently, according to plaintiffs, equipping the vehicles with the ABS was a breach of express warranty. GM, however, argues that its advertisements, public statements and brochures contained statements which were mere puffery and cannot serve as the basis for an express warranty claim.
Plaintiffs' claims for breach of express warranty fail because they are based on advertising statements which have been held to be puffery. For example, one public statement plaintiffs rely on stated that GM had estimated that "crash-avoidance systems, such as anti-lock brakes, `[are] 99 percent more effective than protective systems' such as air bags, because protective systems are rarely used, while `drivers frequently brake aggressively or make sudden road maneuvers to avoid hazards or collisions.'" (Plaintiff's Complaint at 18). Another statement plaintiffs rely on states: "A driver is 100 times more likely to benefit from a vehicle's crash-avoidance capabilities (such as anti-lock brakes) than from its crash-survival capabilities (such as air bags)." Id. Courts have held that such comparative claims, often involving large numbers, are puffing because a consumer cannot reasonably believe that there is a test behind the claim. See Avon Prods., Inc. v. S.C. Johnson & Son, Inc., 1994 WL 267836, *6-7 (S.D.N.Y.1994) (citing Cook, Perkiss & Liehe v. Northern Cal. Collection Serv., 911 F.2d 242, 246 (9th Cir.1990); W.L. Gore & Assocs., Inc. v. Totes Inc., 788 F.Supp. 800, 809 (D.Del.1992)); See also LensCrafters, Inc. v. Vision World, Inc., 931 F.Supp. 1462, 1469 (D.Minn.1996) (holding characterization of product as `vastly' superior to other products is puffery); Hoffman v. A.B. Chance Co., 339 F.Supp. 1385, 1387-88 (M.D.Pa.1972) (holding advertisements which represented that product "offered unprecedented safety" was statement of opinion akin to seller's puffing); Mason v. Chrysler Corp., 653 So.2d 951, 953-54 (Ala.1995)(holding national advertising campaign referring to quality of vehicle was puffing); Autohaus, Inc. v. Aguilar, 794 S.W.2d 459, 464 (Tex.Ct.App. 1990) (holding generally "statements that compare one product to another and claim superiority" not actionable misrepresentations).
Plaintiffs also fail to allege that many of the statements they cite are false. For example, there is no claim that the following statements are false, yet plaintiffs refer to them repeatedly in their complaint: (1) statements referring to ABS and its prevention of skidding and (2) statements referring to the ABS's ability to help maintain controlled straight stops. Plaintiffs do not allege that the ABS does not do these things, so they cannot rely on these statements for their claims of breach of express warranty and/or breach of contract.
Plaintiffs repeatedly allege that the press releases and advertisements[6] all failed to disclose the defect, so, to the extent their express warranty claims are based on advertisements and promotional materials, these claims are based on omissions. (Plaintiff's Complaint at 34). A breach of express warranty claim, however, cannot be premised on an omission. See Sidco Prods. Mktg., Inc. v. Gulf Oil Corp., 858 F.2d 1095, 1099 (5th Cir.1988). In Sidco, the court held that omissions "are not affirmative representations of any sort, and thus cannot support a warranty claim, because express warranties must be explicit." Id.
Plaintiffs' express warranty claims are also deficient because plaintiffs have failed to allege that the advertisements were the basis of their bargains as is required by *1532 U.C.C. § 2-313.[7]See Global Truck & Equip. Co. v. Palmer Mach. Works Inc., 628 F.Supp. 641, 651 (N.D.Miss.1986) (holding buyer must "both be knowledgeable of and rely on the affirmation of fact before an express warranty is created."); Hagenbuch v. Snap-On-Tools Corp., 339 F.Supp. 676, 680 (D.N.H.1972) (holding representations of fact must be "part of the basis of the bargain" for recovery for breach of express warranty) (citing Speed Fastners, Inc. v. Newsom, 382 F.2d 395, 397 (10th Cir.1967)). Indeed a number of the statements were made after some of the vehicles had been purchased. Plaintiff Opal, for example, purchased his vehicle in 1990, and could not have relied on many of the statements which were made in 1993. Plaintiffs' Complaint is utterly devoid of any allegations pertaining to which plaintiffs relied on which statements.

2. Written Warranties

Plaintiffs further allege that they purchased or leased their vehicles under a written warranty which promised the vehicles were "to be free of defects in materials and workmanship at the time of delivery." (Plaintiffs' Complaint at 33-34). Plaintiffs also claim they entered into a "contract with GM, through its dealer-agents, in which they paid GM in exchange for vehicles free from safety defects." (Id. at 34). Defendants have responded by attaching copies of GM warranties for the 1990, 1993 and 1994 Chevy light trucks, which clearly demonstrate that GM did not warrant the vehicles free of defects. Because plaintiffs refer to these warranties in their complaint, it is appropriate for the Court to examine them on a motion to dismiss. See, e.g., Venture Assoc. Corp. v. Zenith Data Sys. Corp., 987 F.2d 429, 431 (7th Cir.1993). The warranties merely provide that if there are any defects in material or workmanship during the warranty period, defendant will provide repair or replacement of the defective parts. The warranties also provide that repair or replacement is the sole remedy available. Further, GM disclaimed liability for consequential damages. Any contract claim plaintiffs may have is based on these written warranties, and the warranties simply do not promise that the vehicles are free of defects.
Plaintiffs' claims for breach of express warranty/breach of contract fail to state a claim for relief Plaintiffs have relied on puffing, have erroneously based their claim on omissions and have failed to allege the statements were part of the basis of their bargains. In addition, plaintiffs' reliance on the written warranties is clearly misplaced because the warranties simply to do not promise that the vehicles are free of defects.

C. Breach of Implied Warranty  General Motors and Kelsey-Hayes

Plaintiffs allege, with respect to both the class and the subclass, that defendants have breached the implied warranties of fitness and merchantability because they knew about the defects and did not disclose them. Plaintiffs' claims for breach of the implied warranty of merchantability[8] fail to state a claim upon which relief can be granted. Loss of resale value is not a proper basis for a breach of implied warranty claim. See American Suzuki Motor Corp. v. Superior Court, 37 Cal.App.4th 1291, 44 Cal.Rptr.2d 526, 529-530 (2d Dist.1995) (citing Carlson v. General Motors Corp., 883 F.2d 287, 297-98 *1533 (4th Cir.1989)). In American Suzuki, the court held that plaintiffs who alleged they "suffered no personal injury or property damage from a vehicle they claim is defectively designed, and it is impliedly conceded that their vehicles have  since the date of purchase  remained fit for their ordinary purpose" could not maintain an action for breach of implied warranty. Id. 44 Cal. Rptr.2d at 527. The implied warranty of merchantability can only be breached when the "vehicle manifests a defect that is so basic it renders the vehicle unfit for its ordinary purpose of providing transportation." Id. at 529-30.
The implied warranty of merchantability arises by operation of law and does not "impose a general requirement that goods precisely fulfill the expectation of the buyer. Instead, it provides for a minimum level of quality." Id. (citing Skelton v. General Motors Corp., 500 F.Supp. 1181, 1191, rev'd on other grounds, 660 F.2d 311 (7th Cir.1981), cert. denied, 456 U.S. 974, 102 S.Ct. 2238, 72 L.Ed.2d 848 (1982)). Taking all of plaintiffs' allegations as true, plaintiffs have failed to state a claim for breach of implied warranty because their allegations do not show that the vehicles are unfit for providing transportation. In Carlson, the court noted that "where a car can provide safe, reliable transportation it is generally considered merchantable." Carlson, 883 F.2d at 297 (citing Taterka v. Ford Motor Co., 86 Wis.2d 140, 271 N.W.2d 653, 655 (1978)). The Court went on to note that the implied warranty of merchantability "clearly does not encompass consumer expectations that a product will hold its value." Id. at 298. Plaintiffs' allegations do not show that the vehicles are unmerchantable because plaintiffs have not alleged a defect that makes the vehicles unfit for the ordinary purpose of providing transportation. Plaintiffs have not alleged brake failure or that they have stopped driving their vehicles because of the defects. They have merely alleged that the ABS performs counter intuitively because of the pedal-to-the-floor phenomenon and that it increases stopping distances, neither of which make the vehicles unfit for providing transportation.
The breach of implied warranty claims against KH should be dismissed for an additional reason. In Hininger v. Case Corp., 23 F.3d 124 (5th Cir.1994), the court held that under Texas law a manufacturer/supplier of combine wheels could not be held liable for breach of implied warranty when the combine, which was manufactured and sold by another entity, was rendered inoperable because of problems with the wheels. The court reasoned that although Texas has abolished the privity requirement and allows a purchaser to sue a remote manufacturer of a finished product for breach of implied warranty, Texas courts would make a distinction between a manufacturer of a finished product and a manufacturer of a component part because component suppliers are unable to disclaim warranty liability effectively.[9] Components are often "hidden within the product, making it difficult or impossible for the manufacturer to notify ultimate purchasers by posting disclaimers on the product itself." Id. at 129. Important to the court was the fact that plaintiffs, as purchasers, had bargained for a finished product, rather than all of the "myriad components that make up" the product and the fact that they had no expectation that the component supplier would resolve any problems with the product. Furthermore, such a far reaching expansion of liability would disrupt the allocation of risk set up in the production and distribution chain. Id. at 128.
New York has also refused to extend warranty liability to a remote component supplier in Goldberg v. Kollsman Instrument Corp., 12 N.Y.2d 432, 240 N.Y.S.2d 592, 191 N.E.2d 81 (1963). In Goldberg the court set out a "thing of danger" exception to the general rule requiring privity of contract for a breach of implied warranty claim. Goldberg, 240 N.Y.S.2d at 593-94, 191 N.E.2d at 82. The court, however, explicitly refused to extend this exception to manufacturers of component parts, holding that adequate protection *1534 is provided by allowing suit against the manufacturer of the finished product. Id. 240 N.Y.S.2d at 594-95, 191 N.E.2d at 83.
Research has revealed that none of the states involved in this action have specifically extended liability for breach of implied warranty to manufacturers of component parts. There are indications that they would not do so. In Pennsylvania, for example, the courts have held that plaintiffs cannot maintain a cause of action for negligence or strict liability when the damage is only to the product itself. REM Coal Co. v. Clark Equip. Co., 386 Pa.Super. 401, 563 A.2d 128, 134 (1989); Johnson v. General Motors Corp., 349 Pa.Super. 147, 502 A.2d 1317, 1323 (1986), allo. denied, 514 Pa. 639, 523 A.2d 346 (1987). The reasoning underlying this holding is summarized by one court as follows:
... the goals of tort theories of recovery are not implicated in a product malfunction case involving only economic losses. A contract action, on the other hand, is perfectly suited to providing an adequate remedy for such losses and recognizes the parties' ability to structure their relative liabilities and expectations regarding the product's performance by setting the terms of their contractual bargain.
REM Coal Co., 563 A.2d at 129. A contract action by a purchaser against a remote component supplier, however, does not allow the supplier to structure its liability at all. Particularly when, as is the case with KH, the purchaser never even knew who the supplier was until long after he made the purchase. The parties cannot set the terms of their contractual bargain in such a situation.
Plaintiffs' claims for breach of implied warranty fail to state a claim for relief because their allegations are based on lost resale value, which is not a proper basis for such a claim. In addition, plaintiffs' alleged defect does not appear to render the vehicles unfit for the ordinary purpose of providing transportation. The claim against KH fails for the additional reason that implied warranty liability does not extend to remote manufacturers of component parts.

D. Fraudulent Misrepresentation  General Motors and Kelsey-Hayes

Plaintiffs allege that defendants made false and misleading representations, in public statements, advertisements, sales brochures, and owner's manuals, that the vehicles were safe and free from dangerous defects. Further, plaintiffs argue, defendants had a duty to disclose the defects because of their superior knowledge. Plaintiffs allege they would not have paid as much for the vehicles if they would have known about the defects.
It is appropriate for a court to determine "whether an alleged misrepresentation is a statement of fact or mere puffery" on a Rule 12(b)(6) motion to dismiss. See In re All Terrain Vehicle Litig., 771 F.Supp. 1057, 1060 (C.D.Cal.1991) (citing Cook, Perkiss & Liehe v. Northern Cal. Collection Serv., Inc., 911 F.2d 242, 245 (9th Cir.1990)). In All Terrain Vehicle Litig., plaintiffs alleged that defendants, who were manufacturers and distributors of All Terrain Vehicles ("ATV's"), had through their national advertising campaign created a "false impression that ATV's were suitable and safe for recreational use." Id. The court, however, dismissed the claims because they were based on advertisements and promotions which were mere puffery. Id. at 1060-61. Plaintiffs in this case have similarly alleged that defendant GM has through its national advertisements, press releases and promotions created a false impression that the ABS system is "safe and reliable." (Plaintiffs' Complaint at 17). For the reasons discussed at length in the express warranty section, plaintiffs fail to state a claim for fraud because these claims are based on statements of puffery. See id. at 1060-61; See also Mason v. Chrysler Corp., 653 So.2d 951, 953-54 (Ala. 1995) (holding national advertising campaign improper basis for fraud claim because advertisements mere puffing).
Plaintiffs' claims for fraudulent misrepresentation also fail because the claims have not been pled with the specificity required by Fed.R.Civ.P. 9(b).[10] In order for *1535 pleadings of fraud to withstand a motion to dismiss, plaintiffs must allege "the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." Bennett v. Berg, 685 F.2d 1053, 1062 (8th Cir.1982). In addition, plaintiffs are required to allege facts supporting their claim of reliance, for where the complaint "only states a conclusion that actual reliance existed" and is void of any allegations that anyone actually read any of the misleading statements or knew of their existence, such an allegation "fails the particularity requirement of Rule 9(b)." Morse v. Abbott Labs., 756 F.Supp. 1108, 1112 (N.D.Ill. 1991). Plaintiffs' complaint is devoid of any explanations of their conclusory allegation that they relied on defendants' statements. There are numerous allegedly fraudulent statements cited in the complaint and eight named plaintiffs, yet plaintiffs do not state which statements each of them relied on. Plaintiffs have failed to plead fraud with the specificity required by Rule 9(b).

E. Fraudulent Concealment  General Motors and Kelsey-Hayes

Similarly, plaintiffs' claims for fraudulent concealment fail because plaintiffs have failed to plead with the specificity required of Rule 9(b). Specifically, plaintiffs have failed to adequately allege reliance. In addition, plaintiffs have failed to state a claim for relief because defendants did not have a duty to disclose. To recover for fraudulent concealment, plaintiffs must prove that defendants had a duty to disclose the concealed information. See Emerald Texas Inc. v. Peel, 920 S.W.2d 398, 403 (Tex.Ct.App.1996); Kovich v. Paseo Del Mar Homeowners' Ass'n, 41 Cal.App.4th 863, 48 Cal.Rptr.2d 758, 760 (2d Dist.1996); Sevin v. Kelshaw, 417 Pa.Super. 1, 611 A.2d 1232, 1236 (1992); Davidson v. Rogers, 431 So.2d 483, 485 (Miss.1983); Fairmont Foods Co. v. Skelly Oil Co., 616 S.W.2d 548, 550 (Mo.Ct.App. 1981). A duty to disclose only arises when there is a confidential or fiduciary relationship, when there is privity of contract or when "one party has superior knowledge or information not within the fair and reasonable reach of the other party." Reeves v. Keesler, 921 S.W.2d 16, 21 (Mo.Ct.App.1996); See also U.S. ex rel. Bussen Quarries, Inc. v. Thomas, 938 F.2d 831, 834 (8th Cir.1991); Kovich, 48 Cal.Rptr.2d at 762-63. In the present case, it is undisputed that there was no confidential or fiduciary relationship between plaintiffs and defendant. It is also undisputed that there was no privity of contract between plaintiffs and defendant.
The only basis, therefore, in this case for imposing a duty to disclose is the claim that defendants had knowledge not within plaintiffs' reach. A claim for fraudulent omission which alleges one party withheld information based on superior knowledge requires the plaintiff to show that he exercised due diligence to discover the information. See McMahon v. Meredith Corp., 595 F.2d 433, 439 (8th Cir.1979); Fairmont Foods Company v. Skelly Oil Co., 616 S.W.2d 548, 550 (Mo.Ct.App.1981). The Court will assume without deciding that plaintiffs have met the pleading requirements for due diligence.
Even if plaintiffs demonstrate they exercised due diligence, however, they have still failed to state a claim for relief because courts have rejected imposing a duty to disclose in cases containing similar factual allegations. See Taylor v. American Honda, 555 F.Supp. 59, 64 (M.D.Fla.1982); Mason v. Chrysler Corp., 653 So.2d 951, 954-55 (Ala. 1995). In Taylor, plaintiffs alleged that defendant had a duty to disclose two dangerous conditions of a motorcycle because defendant had superior knowledge. The court held that absent any sales transaction between Taylor and American Honda, there was no duty to disclose information to the public at large. Id. When there is an arm's length transaction, the court stated:
... mere non-disclosure of material facts ... is ordinarily not actionable misrepresentation unless some artifice or trick has been employed to prevent the representee *1536 from making further independent inquiry, though non-disclosure of material facts may be fraudulent when the other party does not have an equal opportunity to become appraised of the facts.
Id. The court found that plaintiffs had failed to allege any such artifice or trick or the lack of an equal opportunity to become appraised of the facts and therefore had failed to state a claim for fraudulent concealment. Id. at 65. Plaintiffs in the present case have also failed to allege a lack of an opportunity to become appraised of the facts and therefore dismissal of their claims is appropriate.
Another court recently followed the Taylor court's rejection of imposing a duty to disclose on an automobile manufacturer in a case with closely analogous facts. See Mason v. Chrysler Corp., 653 So.2d 951, 954-55 (Ala.1995). In Mason, plaintiffs alleged defendant Chrysler Corporation had a duty to disclose recurring defects in Chrysler's Fifth Avenue automobiles. Plaintiffs alleged they had seen and heard national advertisements which indicated that the Fifth Avenue was "a luxury car and was a quality-engineered, reliable, and smooth-riding car." Id. at 952. The court held that defendant's advertisements were nothing more than puffing and could not be relied on as a basis for a fraud claim. Id. at 954. In addition, the court noted that Chrysler did not owe plaintiffs a duty to disclose the defects because there was no evidence of a confidential relationship and the only contact plaintiffs had with Chrysler was viewing their national advertisements and presenting the vehicle for repair. These facts, standing alone, did not require Chrysler to disclose the information. Id. The facts in Mason are strikingly similar to the facts in the present case and Mason provides strong support for dismissing plaintiffs' fraud claims.
Plaintiffs have also failed to plead their claims for fraudulent concealment with the specificity required of Rule 9(b). A plaintiff bringing a claim for fraudulent omission must allege what the omissions were, the person responsible for failing to disclose the information, the context of the omission and the manner in which it misled plaintiff and what defendant obtained through the fraud. See Weaver v. Chrysler Corp., 172 F.R.D. 96, 101 (S.D.N.Y.1997) (order granting defendant's motion to dismiss) (citing Adler v. Berg Harmon, 816 F.Supp. 919, 924 (S.D.N.Y.1993)). In Weaver, the court dismissed plaintiff's claim for fraudulent omission in part because plaintiff failed to allege when "he read, saw, or heard Chrysler's representations, advertisements and promotional materials that omitted the reference to the defective child seats." Id., at 102. Plaintiffs in the present case have also failed to allege if, when, where or how they heard any of defendant GM's representations.
Plaintiffs have failed to plead fraudulent concealment with the specificity required by Rule 9(b). Plaintiffs have not adequately alleged reliance and have failed to allege facts which support imposing a duty to disclose on defendants.

F. Violations of State Consumer Protection Acts  General Motors and Kelsey-Hayes

Plaintiffs allege that defendants' actions violated the state consumer fraud statutes of each of their states. The pleading requirements of Rule 9(b) apply to claims based on state consumer fraud statutes. See FDIC v. Bathgate, 27 F.3d 850, 876 (3rd Cir.1994); See also NCC Sunday Inserts, Inc. v. World Color Press, Inc., 692 F.Supp. 327, 330 (S.D.N.Y.1988) (holding requirements of Rule 9(b) apply to state based deceptive trade practices claims because Rule 9(b) is a procedural rule). Plaintiffs have failed to plead these claims with the specificity required by Fed.R.Civ.P. 9(b). Each state's statute is unique and plaintiffs are required to plead the essential elements of each one. Plaintiffs have completely failed to do so.
It is clear that some of the plaintiffs' claims under their individual state statutes are patently deficient. For example, the Mississippi statute does not allow class action lawsuits, which bars plaintiffs David and Renee Roberts from bringing their claim on behalf of a purported class. See Miss.Code Ann. § 75-24-15(4) (West, WESTLAW through 1996 Reg. Sess.). In addition, plaintiff Alex H. Opal cannot maintain his claim *1537 for consumer fraud under the California consumer fraud statute because said statute has a statute of limitations of three years and plaintiff Opal purchased his vehicle in 1990. See Cal. Civ.Code § 1783 (West, WESTLAW through 1995-96 Reg. Sess.). Plaintiff's argument that the statute of limitations should be tolled is defeated by his admission that he provided notice to defendant of the defects in 1990. Once he provided notice, he needed to file suit within three years, which he failed to do. Both California and Texas require written notice before the filing of a lawsuit under their statutes and the plaintiffs from those states have not alleged they gave written notice. See Cal. Civ.Code § 1782 (West, WESTLAW through 1995-96 Reg. Sess.); Tex. Bus. & Com.Code Ann. § 17.505 (West, WESTLAW through 1995 Reg. Sess.).
Plaintiffs' claims under the state consumer fraud statutes are based on the same statements relied on for their claims for breach of express warranty and common law fraud. As discussed at length in those sections, these statements are puffery and cannot serve as the basis for liability. See Autohaus, Inc. v. Aguilar, 794 S.W.2d 459, 462 (Tex.Ct.App.1990).

III. CONCLUSION

For the foregoing reasons plaintiffs have failed to state a claim upon which relief can be granted. When dismissing a complaint under Rule 12(b)(6), a district court has discretion on whether or not to allow plaintiffs leave to amend their complaint. See Frey v. City of Herculaneum, 44 F.3d 667, 672 (8th Cir.1995) (citing Williams v. Town of Okoboji, 606 F.2d 812, 814 (8th Cir.1979)). Leave to amend shall be freely given "when justice so requires." Fed.R.Civ.P. 15(a). Plaintiffs, however, have not requested leave to amend their complaint, have not submitted a proposed amended complaint, and have not indicated how they would overcome dismissal pursuant to Fed.R.Civ.P. 12(b)(6). It is appropriate, therefore, to dismiss their complaint without allowing leave to amend. See Cinel v. Connick, 15 F.3d 1338, 1346 (5th Cir.1994) (holding district court did not abuse discretion in dismissing complaint without leave to amend when plaintiff had not requested leave to amend and had not indicated how he would overcome 12(b)(6) dismissal).
Accordingly,
IT IS HEREBY ORDERED that defendant Kelsey-Hayes' Motion to Dismiss Plaintiffs' Complaint be and is granted.
IT IS FURTHER ORDERED that defendant General Motors' Motion to Dismiss Plaintiffs' Complaint be and is granted.
NOTES
[1] Each of the following judicial districts had an action pending: Southern District of Florida, Central District of Illinois, Southern District of Mississippi, Eastern District of Missouri, Southern District of New York and Southern District of Texas.
[2] Plaintiffs define the purported class to include: "All persons or entities residing in the United States who own or lease a model-year 1989-1996 GM vehicle equipped with an ABS system fabricated by Kelsey-Hayes, excluding defendants and their parents, subsidiaries, affiliates and authorized dealers." (Plaintiffs' Complaint at ¶ 20(a)).
[3] Plaintiffs define the pedal-to-the-floor phenomenon as follows: "When the driver applies pressure on the brakes in an effort to slow or stop the vehicle during hard or emergency braking situations, the brake pedal will fall rapidly and without warning to the floor of the vehicle." (Plaintiffs' Complaint at ¶ 5).
[4] Plaintiffs also claim that, when the ABS starts to work, the brake pedal often falls below the accelerator pedal which can cause a driver to mistakenly step on the accelerator pedal, resulting in accidents.
[5] Unless otherwise noted, all claims are brought on behalf of the purported class. The purported subclass is defined as "All class members who own or lease a model-year 1992 to 1994 Suburban vehicle." (Plaintiffs' Complaint at ¶ 20(b)).
[6] Many of these promotional materials describe how the ABS works. Plaintiffs have alleged these descriptions are false because GM has failed to disclose the pedal-to-the-floor phenomenon and the increased stopping distance, but plaintiffs have not argued that the description is otherwise false. (Plaintiffs' Complaint at 19, 20, 23).
[7] U.C.C. § 2-313 provides in relevant part:

(1) Express warranties by the seller are created as follows:
(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
U.C.C. § 2-313, U.L.A. (West, WESTLAW through 1995).
[8] U.C.C. § 2-314 governs the implied warranty of merchantability and states in relevant part:

(1) Unless excluded or modified (Section 2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind ...
(2) Goods to be merchantable must be at least such as
. . . . .
(c) are fit for the ordinary purposes for which such goods are used;
U.C.C. § 2-314, U.L.A. (West, WESTLAW through 1995).
[9] The plaintiffs in Hininger, like the plaintiffs in the present case, did not claim they had any contact with the component supplier, that the wheels had the supplier's name on them, or that the supplier advertised its product to the public at-large. Hininger, 23 F.3d at 128.
[10] Federal Rule of Civil Procedure 9(b) states: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed.R.Civ.P. 9(b).